ST. LUKE'S HOSPITAL,
Plaintiff, Appellee,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellant.

No. 86-1602.

United States Court of Appeals,
First Circuit.

Argued Nov. 13, 1986.

Decided Feb. 3, 1987.

Stuart I. Silverman, Dept. of Health and Human Services, with whom Richard Willard, Asst. Atty. Gen., Washington, D.C., William F. Weld, U.S. Atty., Boston, Mass., Ronald E. Robertson, Gen. Counsel, and Ann T. Hunsaker, Chief Counsel, Washington, D.C., were on brief for defendant, appellant.

Mitchell H. Kaplan with whom Mark A. Borreliz, Christopher M. Jedrey and Choate, Hall & Stewart, Boston, Mass., were on brief for plaintiff, appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

Hospitals that provide Medicare services receive reimbursement from the Government in an amount determined by a private insurance company (called a "fiscal intermediary") based upon the insurance company's examination of a cost report that the hospital has given it. Should a hospital believe that an intermediary has made a mistake, it is entitled to ask a government body, called the Provider Reimbursement Review Board (PRRB), to review the intermediary's decision. The legal issue before us concerns the proper interpretation of a statute that describes the Board's powers on review. The statute says:

* Of the Second Circuit, sitting by designation.

The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination. .

42 U.S.C. § 1395oo (d).

■ The question before us is whether this statute grants the Board the *power* to order reimbursement for costs identified in the cost report, but as to which the hospital did not specifically ask the intermediary for reimbursement. Put more broadly, the question is whether the statute gives the Board the power to decide a new issue raised for the first time before it. We believe that the statute does give the Board this power. We also believe, however, that the Board need not exercise that power. Whether, or when, it will do so is basically up to the Board (or up to the Department of Health and Human Services, of which the Board is a part). Because the District of Columbia Circuit has taken a contrary view of the matter, *Athens Community Hospital v. Schweiker*, 743 F.2d 1 (D.C.Cir. 1984) (*Athens II*); *see also University of Cincinnati v. Secretary of Health and Human Services*, 809 F.2d 307 (6th Cir. 1987); *North Broward Hospital District v. Bowen*, 808 F.2d 1405 (11th Cir.1987); *Baptist Hospital East v. Secretary of Health and Human Services*, 802 F.2d 860, 863–66 (6th Cir.1986); *Community Hospital of Roanoke Valley v. Health and Human Services*, 770 F.2d 1257, 1261–63 (4th Cir.1985) (following *Athens II*), we shall explain our reasoning in some detail.

## I.

The Appellee, St. Luke's Hospital, provides some of its patients with services covered by Medicare. The Government reimburses St. Luke's for the cost of providing these services, including a pro rata portion of its total fixed costs. St. Luke's, like most Medicare providers, receives its reimbursements through a fiscal intermediary. *See* 42 U.S.C. § 1395h.

The reimbursement procedure under which St. Luke's operated at all times relevant here works roughly as follows: The intermediary initially estimates the hospital's likely annual Medicare costs, and it pays the hospital that *estimated* amount on a monthly basis. Within three months after the end of the fiscal year, the hospital, by then having determined its *actual* costs, submits to the intermediary a "cost report" on the closed fiscal year. This "cost report" is typically several hundred pages long. It lists both Medicare-reimbursable costs and other, nonreimbursable costs, with the hospital indicating which costs Medicare is to reimburse. After reviewing the report, the intermediary decides whether, or the extent to which, it agrees with the hospital's analysis, and it sends the hospital a Notice of Program Reimbursement (NPR) embodying its decision. If the total reimbursement due (as stated in the NPR) differs from the total estimated payments already made, the intermediary pays, or the hospital pays back, the difference.

Should a hospital disagree with the intermediary, it can obtain review of the intermediary's decision by filing with the Provider Reimbursement Review Board, "within 180 days after notice of the intermediary's final determination," a request for "a hearing with respect to [the] cost report." 42 U.S.C. § 1395oo (a). The Board will then hold a formal administrative hearing, at which the hospital has the statutory rights "to be represented by counsel, to introduce evidence, and to examine and cross-examine witnesses." 42 U.S.C. § 1395oo (c). The Board's decision is to be "based upon the record made at [the] hearing," a record that may contain both "the evidence considered by the intermediary" (presumably the cost report) and new evidence. 42 U.S.C. § 1395oo (d). As previously mentioned, the Board has the statutory power "to affirm, modify, or reverse a final determination of the fiscal intermedi-

ary with respect to a cost report *and to make any other revisions on matters covered by such cost report ... even though such matters were not considered by the intermediary in making such final determination." Id.* (emphasis added). The Secretary of Health and Human Services, in turn, may reverse, affirm, or modify any Board decision, and the hospital may "obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary." 42 U.S.C. § 1395oo (f).

After the close of its 1978 fiscal year, St. Luke's filed a cost report for that year with its intermediary. It claimed (among other things) certain sick leave expenses. The intermediary denied reimbursement for those expenses, and St. Luke's appealed that denial, along with denials of various other items, to the Board. While its appeal for 1978 was pending, St. Luke's had to file its cost report for fiscal year 1979. This time, St. Luke's did not ask the intermediary for reimbursement for the sick leave expense item; rather, it included the sick leave expense item on a page in its cost report called Worksheet A–8, which lists expenses for which reimbursement is "self-disallowed." St. Luke's now says it put the item on that page because it knew that the intermediary would not permit reimbursement for it, as the intermediary had just disallowed the same kind of cost only a few months earlier. St. Luke's later appealed several aspects of the intermediary's fiscal year 1979 determination; St. Luke's included in its appeal a request for reimbursement for the sick leave item.

The Board consolidated the 1978 and 1979 appeals. It issued its decision in early 1984. It held that the intermediary should have reimbursed St. Luke's for the sick leave item in 1978. It did not, however, require the intermediary to reimburse St. Luke's for that same item for 1979, nor did it give its reason for the difference in treatment. The Deputy Administrator of the Health Care Financing Administration, acting under a delegation of authority from the Secretary of HHS, then reversed the Board's decision that the 1978 sick leave item was reimbursable. St. Luke's sought judicial review for both years in federal district court. And, the court, reversing the Administrator, held that the Board was right on the merits; the Government should have reimbursed St. Luke's for the sick leave item in 1978. 632 F.Supp. 1387, 1390–91 (D.Mass.1986). The court also said that "the Board has jurisdiction to hear" the hospital's appeal in respect to the same sick leave item in 1979, the year in which St. Luke's "self-disallowed" that item in its cost report. *Id.* at 1391–94. The Secretary of HHS now appeals only this last determination, arguing that 42 U.S.C. § 1395oo (d) denies the Board the power to decide *any* issues not first raised before the intermediary.

## II.

The precise question before us is whether the Secretary's legal view of the relevant statute is correct. Does the Board lack the legal *power* to consider the hospital's 1979 sick leave claim, a claim (1) in respect to a cost item mentioned in the cost report, (2) which cost report was properly before the Board on review, but (3) which claim was not specifically raised before the intermediary? We believe the Board did possess the legal power to consider this claim, though whether or not the Board should have *exercised* that power is for the Board to decide. Indeed, the Board may decide that its power to consider matters not specifically raised before the intermediary, like many similar powers of courts and agencies, should be exercised only sparingly.

We base this conclusion on the following considerations. First, the statute specifically states that the Board has this power. It says that the "Board shall have the power ... to make ... other revisions on matters covered by [the] cost report ... even though such matters were not considered by the intermediary...." The statute does not say that the Board *must* consider matters not considered by the intermediary. But, it does says the Board may,

it can, it has the "power" to do so. The Board might decide to limit such consideration to unusual instances; indeed, it might do so explicitly in exercising its "full power ... to make rules ... appropriate to carry out" its tasks. 42 U.S.C. § 1395oo (e). But, the statute's language indicates that Congress basically left it up to the Board to decide when, or whether, it should hear claims not raised before the intermediary.

Second, the legislative history suggests that the statute means what it says. The House committee report, in describing the provision, basically repeats the statute in slightly broader, less technical language. It says that the Board may make revisions in the intermediary's determination; it "may affirm, modify, or reverse the fiscal intermediary's determination, including revisions which are adverse to the provider and *revisions involving matters not considered by the intermediary.*" H.Rep. No. 231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. and Admin.News 4989, 5309 (emphasis added). The Report also points out that the Board's decisions

> would have to be based on the record made at [the] hearing [before the Board], which may include any evidence submitted by the Department ... [as well as] the evidence or record considered by the intermediary.... [The] Board may find in whole or in part for the provider or the Government (*including a finding based upon the evidence before it that the provider owes sums in addition to the amount raised in the appeal*).

*Id.*, 1972 U.S.Code Cong. and Ad.News at 5094–95 (emphasis added). The underscored language does not make much sense if the Board may only consider issues already explicitly disputed between the provider and the intermediary. It makes considerable sense, however, once one remembers that the Board's procedure is a kind of 'hybrid,' exhibiting some features of initial factfinding (witnesses, cross-examination, new evidence) and some features of review. Such a process may develop new information calling for revisions of the intermediary's final cost figure in unanticipated ways; where the provider might have

thought the intermediary's figure too low, the Board, for totally different reasons, might think it too high. Given its hybrid procedure, Congress might reasonably have wished the Board to understand that it has the *power* to make any modifications (in either direction) that new information before it seems to call for.

Third, even if we were to read the statute very narrowly, ignoring the last clause entirely and (solely for purposes of argument) analogizing the Board to a court or agency body with purely appellate functions, the Board would still have the power to hear at least some issues not raised before the intermediary. After all, appellate courts, in reviewing the judgments of district courts, will normally not consider issues not raised below, *see Johnston v. Holiday Inns*, 595 F.2d 890, 894 (1st Cir. 1979), but will nonetheless in "exceptional cases or particular circumstances ... review questions of law neither pressed nor decided below," *United States v. Krynicki*, 689 F.2d 289, 291 (1st Cir.1982). Review in the agency context is still more flexible; reviewing courts normally refuse to consider issues not first raised before the agency on the grounds of failure to exhaust remedies, but there are numerous exceptions to this doctrine, permitting courts to consider matters despite a failure to have raised them before the agency. *E.g., Walker v. Southern Ry. Co.*, 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966) (exhaustion not required due to excessive backlog in agency proceedings), *modified on other grounds*, 386 U.S. 988, 87 S.Ct. 1300, 18 L.Ed.2d 332 (1967); *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) (exhaustion not required where agency action clearly unlawful); *Etelson v. Office of Personnel Management*, 684 F.2d 918, 923–26 (D.C. Cir.1982) (exhaustion not required where claim raised in another form at earlier stage of proceeding and agency clearly disinclined to accept it); *West v. Bergland*, 611 F.2d 710, 714–20 (8th Cir.1979) (exhaustion not required where agency had consistently enforced challenged regulation for forty years), *cert. denied*, 449 U.S. 821, 101

S.Ct. 79, 66 L.Ed.2d 23 (1980); *Finnerty v. Cowen,* 508 F.2d 979, 981–83 (2d Cir.1974) (exhaustion not required for due process challenge to agency procedure); *Wolff v. Selective Service Local Board No. 16,* 372 F.2d 817, 825 (2d Cir.1967) (exhaustion not required where free speech rights implicated). The relation between reviewing and factfinding bodies within an agency is typically at least as flexible as that between court and court or court and agency. Thus, just as an appellate court can correct, say, a mathematical mistake in a judgment that is before it on review, so, one suspects, the Secretary could correct an obvious mistake in a Board decision that is before the Secretary. Congress needed to do no more to bestow this power than to say that the Secretary "reverses, affirms, or modifies" the Board's decision. 42 U.S.C. § 1395oo (f). The basic legal principle in respect to review of matters not raised below (whether one thinks of courts or agencies) is not "never," it is "hardly ever"; the legal power exists; a reviewing body exercises it sparingly.

The special features of Board review suggest that its reviewing powers are, if anything, broader, not narrower, than those of the typical reviewing body. For one thing, the Board's authorizing statute contains a special, extra clause specifically stating that it can consider matters not brought to the intermediary's attention. For another, the Board operates to a degree like an initial factfinder, not simply a reviewing body. Finally, the intermediary whose work it reviews is a private agency, entrusted with the job of dispensing public funds. Why would Congress wish to give HHS such unusually restricted powers of review over the private body's decision? All this is simply to say that the special circumstances of the reviewing body, as well as general legal principles, support the conclusion that the statute means what it says.

We are not convinced by the D.C. Circuit's contrary view, as explained in *Athens II.* The court in that case wrote that the Board lacks the legal power to consider a claim not made before the intermediary. It explained the last clause of the statute by saying that the clause refers to corrections necessary to "accommodate" claims properly raised and accepted by the Board. For example, a hospital might argue and win its claim that fixed costs should be allocated according to a certain principle, and that principle might then require other cost adjustments that for some reason no one had mentioned to the intermediary. *See* 743 F.2d at 9. Although the court's opinion seems primarily to focus on whether the Board *must* consider issues not raised below, we agree with the Secretary that the *Athens II* opinion goes beyond holding that the Board *need not* do so; it says the Board *cannot* do so. Yet, insofar as it goes beyond "need not," the court's reasons are not persuasive.

*Athens II* says that it is

not plausible to contend that Congress has created a scheme where the provider can claim dissatisfaction and have recourse to an appeal procedure because the intermediary failed to read the provider's mind and anticipate all those things the provider would like to be reimbursed for, even though it did not request them.

743 F.2d at 6. The court also points to "adverse practical consequences" of any such approach. *Id.* These considerations, however, at most counsel in favor of ordinary reviewing principles, namely that *except in unusual cases,* a reviewing body will not consider an issue not raised below.

*Athens II* states that the power to hear new claims would be inconsistent with the reopening regulations, regulations that permit a hospital to amend a filed cost report under certain circumstances, but which make an intermediary's decision not to reopen unreviewable (though the intermediary's substantive decision if it does reopen is subject to review). 42 C.F.R. §§ 405.-1885 *et seq.* The D.C. Circuit feared that a decision to reopen as to one matter but not others could not be final as to the others, for a hospital might raise them before the Board anyway; "reopening with respect to one matter would permit the provider to

contest before the PRRB any matter in the entire cost report." 743 F.2d at 8. Again, however, any problem in this regard disappears once one realizes that the Board has discretion not to consider issues not raised below.

*Athens II* notes that the agency itself interpreted the statute as depriving it of jurisdiction to hear issues not raised before the intermediary. 743 F.2d at 8 (citing *Mt. Zion Hospital Hill-Burton Group Appeal v. Blue Cross and Blue Shield Association/Blue Cross of California,* Medicare and Medicaid Guide (CCH) ¶ 32,370 (P.R.R.B.1982) and several unpublished memoranda). In fact, however, the agency's position on this issue has been inconsistent. We have found several instances in which the Board has decided questions not raised before the intermediary. *Ravenswood Hospital Medical Center v. Blue Cross Association/Health Care Service Corp.,* Medicare and Medicaid Guide (CCH) ¶ 31,-945, at 9607–08 (P.R.R.B.1982); *St. Joseph Medical Center v. Blue Cross Association/Blue Cross of Southern California,* Medicare and Medicaid Guide (CCH) ¶ 30,-925, at 9852 (P.R.R.B.1981); *Unity Hospital v. Blue Cross Association/Blue Cross of Northern California,* Medicare and Medicaid Guide (CCH) ¶ 31,097, at 10,407 (P.R.R.B.1981). Even if these decisions were never explicitly endorsed by the Secretary, the Board's own interpretations, which the Secretary declined to reverse, are entitled to some weight.

Finally, we do not see why Congress would have to write a special clause into the statute in order to grant the Board the power simply to make revisions in an appealed decision that are "necessary" to accommodate other Board revisions. Why is such power not inherent in the Board's power (and the Secretary's power) to affirm, reverse, or modify a decision before it? After all, appellate courts have not hesitated to make appropriate adjustments in, say, tort or attorney's fee judgments, as required upon accepting the substantive argument of one of the parties. *E.g., Ferrero v. United States,* 603 F.2d 510, 515 (5th Cir.1979) (entering judgment for maximum amount of damages supported by the record after determining that jury verdict was excessive); *Drayton v. Jiffee Chemical Corp.,* 591 F.2d 352, 366–70 (6th Cir. 1978) (similar); *Spectrofuge Corp. v. Beckman Instruments,* 575 F.2d 256, 290 (5th Cir.1978) (reversing attorney's fee award "because the plaintiff was ultimately unsuccessful and because of our conviction that the antitrust claim bordered on the frivolous"); *United States v. Speaker,* 535 F.2d 823, 829–30 (3d Cir.1976) (reducing "nominal" damage award from $500 to $1 after finding no compensatory award warranted); *see also Turner v. Japan Lines,* 702 F.2d 752 (9th Cir.1983) (determining calculation of interest award after vacating judgment n.o.v.). We judges have not thought a special statute required to give us such power; rather, it is inherent in the notion of 'reviewing a judgment.' Moreover, to interpret the statute as authorizing only the kind of "issue-not-raised" review envisioned in *Athens II* threatens to recreate many of the practical problems the D.C. Circuit feared, and, in addition, to force the federal courts, rather than the agencies, to decide the legal (under *Athens II* "jurisdictional") question of whether a particular collateral issue is, or is not, "necessarily related" to an issue that was raised. The broader (and we believe more rational) reading of the statute allows the agency (rather than requires the courts) to work these matters out.

In sum, we believe that the statute means what it says; the Board has the legal power to decide matters not raised below. Indeed, we suspect, although we need not decide, that Congress inserted the special language making this power clear because, in light of the Board's factfinding functions, Congress expected that the Board would likely exercise this power more often than reviewing bodies typically do.

### III.

The Secretary argues that we must follow *Athens II* for a special reason. He

argues that we must defer to an agency's own interpretation of its authorizing statute, *see Connecticut Department of Income Maintenance v. Heckler,* 471 U.S. 524, 105 S.Ct. 2210, 2215, 85 L.Ed.2d 577 (1985) ("We have often noted that the interpretation of an agency charged with the administration of a statute is entitled to substantial deference." (quoting *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982))); *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), and that HHS's interpretation of the statute is that of *Athens II.* We do not agree with this argument for three reasons.

■ First, we simply read the statute to mean what it says; we interpret the language literally, and we find no initial ambiguity. Furthermore, our detailed analysis convinces us that our initial, literal reading of the words is also consistent with the statute's history and purposes. As the Supreme Court has recently said, "deference" to the agency's view of a statute is appropriate only when the statute is ambiguous. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781.

Second, even were the statute ambiguous, the reasons for giving great weight to an agency's statutory interpretation are absent. One reason for "deference" is that an agency may be likely to know more about what Congress had in mind than would a court. The agency, in a sense, was present at the statute's creation; through institutional memory, continued contact with congressional staffs, and daily efforts to administer the statute, it may develop "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). Nonetheless, "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if

lacking power to control." *Id.; see also Mayburg v. Secretary of Health and Human Services,* 740 F.2d 100, 105–06 (1st Cir.1984). Here, the agency has changed its views, at some times taking the position that we now find correct. *See Ravenswood Hospital,* Medicare and Medicaid Guide (CCH) ¶ 31,945; *St. Joseph Medical Center,* Medicare and Medicaid Guide (CCH) ¶ 30,925; *Unity Hospital,* Medicare and Medicaid Guide (CCH) ¶ 31,097; *see also Athens Community Hospital v. Schweiker,* 686 F.2d 989, 996 (D.C.Cir.1982) (*Athens I*) (Secretary apparently conceded having authorized Board to hear new claims under some circumstances), *modified,* 743 F.2d 1 (D.C.Cir.1984). This inconsistency detracts considerably from the force of the Secretary's present view, insofar as that force rests upon the agency's 'presence at the statute's creation.' *See Bowen v. American Hospital Association,* — U.S. ——, 106 S.Ct. 2101, 2122 n. 34, 90 L.Ed.2d 584 (1986); *General Electric Co. v. Gilbert,* 429 U.S. 125, 143, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976); *United States v. Missouri Pacific R.R. Co.,* 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322 (1929).

A second reason for "deference" is that Congress may have intended the agency to have the power to make the statutory interpretation in question. Congress sometimes delegates a law-declaring function to an agency by express language. *See Schweiker v. Gray Panthers,* 453 U.S. 34, 43–44, 101 S.Ct. 2633, 2639–40, 69 L.Ed.2d 460 (1981); *Batterton v. Francis,* 432 U.S. 416, 424–26, 97 S.Ct. 2399, 2404–06, 53 L.Ed.2d 448 (1977). In other instances, it delegates such authority by implication. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782. An implied delegation of a law-declaring function is especially likely where, as here, the question is interstitial, involves the everyday administration of the statute, implicates no special judicial expertise, and is unlikely to affect broad areas of the law. *Compare NLRB v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) *with Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); *see also Rybicki v. Hartley,*

792 F.2d 260, 262 (1st Cir.1986); *Mayburg,* 740 F.2d at 106–07. Nonetheless, to infer such a delegation here would make no sense. Congress explicitly delegated to the Board the power to make rules and regulations "necessary or appropriate" to carry out its statutory tasks. The Board thus has the power to limit by rule the extent to which it will hear an issue not raised; it can also do so on a case-by-case basis. Why then would it need the power to *interpret the statute* as forbidding it to hear issues not raised below?

Third, in any case, "deference" amounts only to giving considerable weight to the administrator's interpretation of the statute. To interpret this statute as denying the Board the power to hear issues not raised below seems wrong, to the point where any additional "weight" given to the administrator's interpretation simply cannot carry the day. *See Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) ("[D]eference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." (quoting *American Ship Building Co. v. NLRB,* 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965))); *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) (the courts "must reject administrative constructions ... that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement").

### IV.

St. Luke's argues not only that the Board has the power to hear its 1979 claim, but that we should order the Board to do so. St. Luke's has a strong equitable argument. It says that it "self-disallowed" the 1979 sick leave costs because the intermediary's rejection of the same cost item for 1978 made clear that it would not accept it for 1979, and that it feared prosecution for fraud under 42 U.S.C. § 1395nn if it claimed this item again knowing that it would be rejected. There is substantial evidence in the record, which the trial court found "persuasive," that this fear, in light of recent statements both of the Department and of the intermediary, was reasonable. 632 F.Supp. at 1393. Moreover, since St. Luke's was in the process of appealing the 1978 decision—an appeal that was later consolidated with the 1979 appeal—its failure to raise the issue before the intermediary in respect to 1979 prejudiced no one. *Cf. Etelson v. Office of Personnel Management,* 684 F.2d at 923–26 (agency's rejection of appellant's argument at an earlier stage in a proceeding is an important factor in not requiring exhaustion); *West v. Bergland,* 611 F.2d at 714–20 (Secretary's longstanding enforcement of a regulation is an important factor against requiring exhaustion); *Wolff v. Selective Service Board,* 372 F.2d at 825 (agency's rejection of appellants' argument in other proceedings is relevant to exhaustion requirement). On the other hand, the Secretary now points to a 1979 amendment to the Provider Reimbursement Manual, which ought to have allayed the hospital's fear of prosecution. It says:

> There will be no referral to the U.S. Attorney if the allowability of a cost report item or items have been or are being disputed, and the provider clearly indicates on the subsequent cost report that the items are included, and the reason for inclusion (i.e., such as to preserve the provider's right to appeal, or other legal rights.)

Medicare Provider Reimbursement Manual § 2425.1 (HIM–15). This provision was included, according to the accompanying memorandum, "so that providers will not be discouraged from exercising their statutory right to appeal."

■ Under the circumstances, we believe it is up to the Board in the first instance to decide whether it will or will not hear the 1979 claim. The Board previously decided that it would not hear this claim, apparently for the reason that it believed it lacked the legal power to do so. That reason

being incorrect, the Board must now decide the same question, but as a matter of Board policy. "All we ask of the Board is to give clear indication that it has exercised the discretion with which Congress has empowered it." *SEC v. Chenery Corp.*, 318 U.S. 80, 94–95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943) (quoting *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271 (1941)).

*The decision of the district court is vacated and the case remanded for further proceedings consistent with this opinion.*