Gloria WILCOX, et al.,
Plaintiffs, Appellees,

v.

H. Rollin IVES, et al.,
Defendants, Appellees.

Appeal of SECRETARY of HEALTH and HUMAN SERVICES, Defendant.

No. 88–1371.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1988.

Decided Dec. 20, 1988.

As Amended Dec. 20, 1988.

Joyce Elise McCourt, Asst. Regional Counsel, with whom Richard S. Cohen, U.S. Atty., Portland, Me., and David R. Collins, Asst. U.S. Atty., Washington, D.C., were on brief, for defendant.

Thomas H. Kelley with whom Mary Henderson, Pine Tree Legal Assistance, Inc., Robert E. Mittel and Mittel & Hefferan, Portland, Me., were on brief, for plaintiffs, appellees.

Christopher C. Leighton, Asst. Atty. Gen., and James E. Tierney, Atty. Gen., on brief, for defendants, appellees.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

The Secretary of the United States Department of Health and Human Services (HHS) appeals an order of the district court which held that HHS regulation 45 C.F.R. § 302.51 was invalid because it impermissibly contradicted 42 U.S.C. § 657(b)(1) by prohibiting the Maine Department of Human Services (DHS) from making multiple pass-through payments to recipients of Aid To Families With Dependent Children (AFDC) when the state DHS receives two or more child support payments in a given month. We affirm.

## I. BACKGROUND

As a condition for receiving AFDC benefits, the recipient must assign his or her right to child support payments to the state DHS. Federal law provides that:

The amounts collected as support by a State ... shall ... be distributed as follows:

(1) *the first $50 of such amounts as are collected periodically which represent monthly support payments shall be paid to the family without affecting its eligibility for assistance* or decreasing any amount otherwise payable as assistance to such family during such month;

(2) such amounts as are collected periodically which are in excess of any amount paid to the family under paragraph (1) and which represent monthly support payments shall be retained by the State ...

42 U.S.C. § 657(b) (emphasis added).

The dispute between the plaintiffs-appellees (AFDC recipients) and the defendant-appellant (Secretary of HHS) arises from situations where no child support payment is received by the state in one month and a multiple payment is received in another month. The Secretary's position is that the AFDC family should only receive a single $50 pass-through in such situations: no pass-through for the month in which no payment was received, and only one $50 pass-through for the month in which multiple payments were received. The AFDC recipients' position, on the other hand, is that the family is entitled to multiple $50 pass-throughs for the month in which the multiple payments were received by the state.

The HHS federal regulation in effect when the plaintiffs brought their suit, states:

(a) For the purposes of distribution under this section, amounts collected shall be treated first as payment on the required support obligation for the month in which the support was collected and if any amounts are collected which are in excess of such amount, these excess amounts shall be treated as amounts which represent payment on the required support obligation for previous months.... The date of collection shall be the date on which the payment is received by the IV–D agency or the legal entity of the State or political subdivision actually making the collection on behalf of the IV–D agency....

(b) The amounts collected as support by the IV–D agency ... shall be distributed as follows:

(1) Of any amount that is collected in a month which represents payment on the required support obligation for that month, the first $50 of such amount shall be paid to the family.... *If the amount collected includes payment* on the required support obligation *for a previous month or months, the family shall only receive the first $50 of the amount which represents the required support obligation for the month in which the support was collected.* ... No payment shall be made to a family under this paragraph for a month in which there is no child support collection.

45 C.F.R. § 302.51 (emphasis added).

Plaintiffs originally filed a complaint against the State DHS in 1985 seeking an order declaring that failure to make multiple pass-through payments violated plaintiffs' rights and an order enjoining the State from failing to make such payments. The State defendant removed to federal district court and filed a third party complaint against HHS. The plaintiffs amended their complaint to add claims against the Secretary, and joined additional plaintiffs to the complaint. Defendants' motions for dismissal and for summary judgment were denied by the district court. *Wilcox v. Petit,* 649 F.Supp. 685 (D.Me.1986). A subsequent motion for relief from this order was also denied. *Wilcox v. Petit,* 653 F.Supp. 709 (D.Me.1987). A motion by plaintiffs for class certification was granted. *Wilcox v. Petit,* 117 F.R.D. 314 (D.Me. 1987).

The class includes AFDC families where (i) the absent parent had child support payments deducted from his wages on time, but his employer forwarded the withheld wages to the Maine DHS late, (ii) the absent parent was out of state and made child support payments to an out-of-state agency on time, but that agency forwarded the payments to the Maine DHS late, (iii) the absent parent made child support payments directly to the Maine DHS on time, but the DHS improperly credited the payments, and (iv) the absent parent made either lump-sum payments or late child support payments directly to the Maine DHS.

The district court's final opinion found for the plaintiffs, holding that the Secretary's regulation § 302.51 prohibiting multiple pass-through payments contradicted the federal statute § 657(b)(1) and was therefore invalid. *Wilcox v. Ives,* 676 F.Supp. 355 (D.Me.1987). The Secretary then appealed.

## II. STATUTORY LANGUAGE

### A. *42 U.S.C. § 657(b)(1)*

Our initial analysis focuses on the statutory language itself. The relevant provision of the statute states:

[T]he first $50 of such amounts as are *collected periodically* which represent monthly support payments shall be paid to the family *without affecting its eligibility for assistance....*

42 U.S.C. § 657(b)(1) (emphasis added). HHS regulation § 302.51, which limits a state agency to paying only one pass-through payment in a month where multiple child support payments are collected by the home state is inconsistent with this language. A cardinal rule of statutory construction is that the words in a statute must be given their plain, ordinarily understood meaning. *E.g. Perrin v. U.S.,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). For the Secretary's position to be valid, "periodically" would have to be synonymous with "monthly," which is contrary to the plain meaning of the word. Every court that has decided this issue to date has concluded that the Secretary's interpretation of the statute is wrong. The court below reasoned as follows:

*An amount which represents a monthly support payment is simply the amount of the monthly support obligation* (much as "an amount that represents a year's salary" means the amount that one earns in a year ...). ... [The statute's] use of the term "collected periodically" is clearly intended to provide flexibility that would not be present if the term "collected monthly" were used. Under the interpretation offered by the Secretary in his current motion for reconsideration, "monthly support payments" would have to mean the amount received

in a month rather than the amount owed, and the word "periodically" would have to be dropped from the statute and replaced with the word "monthly." This is an unreasonable interpretation of the statute.

*Wilcox v. Petit,* 653 F.Supp. 709, 710–711 (D.Me.1987) (emphasis added).

In *Beasley v. Harris,* 671 F.Supp. 911 (D.Conn.1987) the court concluded:

[*The Secretary's regulation] is not consistent with either the statutory language or purpose of the Act.* ... No exception to the statute [concerning the $50 pass-through] is either expressly or impliedly made for situations where more than one support payment is received in a given month. The statute quite clearly provides an additional measure of support to the AFDC family. It hardly seems consistent with that policy that an AFDC family should be penalized simply because its support payments are not paid or collected in an orderly, sequential manner.... To the extent the regulations ... seek to preclude the making of a second pass-through payment simply because two support payments are collected in the same month, they are in violation of the statute.

*Id.* at 918–919 (emphasis added).

The Illinois Court of Appeals held that § 657(b)(1)

unambiguously requires that a pass-through payment must be made when a child support payment is received by the State in the month after it is due ... *§ 657(b)(1) requires that pass-through payments be made on all monthly child support amounts which are collected. The statutory language provides no exception based upon the time the child support payment is received.* Moreover, the employment of the phrase "collected periodically" in the statute rather than "collected monthly" is a clear indication that Congress did not intend to establish any such exception.

*Humble v. Department of Public Aid,* 165 Ill.App.3d 624, 116 Ill.Dec. 509, 512, 519 N.E.2d 99, 102 (1988) (emphasis added).

The district court of the Western District of Washington held:

The express language of § 657(b)(1) ... entitles AFDC recipients to a $50 pass-through as to each support payment collected. *Nothing in the wording of the section would limit pass-throughs to those collected in the month in which they fall due.*

*Vanscoter v. Bowen,* No. C86–1568WD, slip op. at 5 (W.D.Wash. July 15, 1988) (emphasis added). *See also Golden v. Department of Public Aid,* 150 Ill.App.3d 617, 103 Ill.Dec. 473, 477, 501 N.E.2d 790, 794 (1986) (where child support payment was paid on time to circuit court clerk's office but not transmitted by that office to the bureau of child support until the following month, the court held that "the proper 'date of collection' for purposes of 'pass-through' payments is the date of collection by the circuit court clerk's office").

We agree with the courts that have ruled on this issue and conclude that the plain meaning of § 657(b)(1) of the statute requires that the state make multiple pass-throughs to the family when the state receives multiple payments during a given month. "Collected periodically" clearly covers payments that may be collected at a variety of different time intervals, and can in no way be construed to be limited to only those payments collected monthly. Moreover, amounts which "represent monthly support payments" means just that—"represent"—and does not mean that the payment has to be actually "received" by the in-state agency each month. Thus, the regulation is in direct conflict with the plain meaning of the statute.

**B.** *42 U.S.C. § 602(a)(8)(A)(vi)*

The Secretary also urges that multiple pass-throughs are precluded by 42 U.S.C. § 602(a)(8)(A)(vi): "the State agency ... shall disregard the first $50 of any child support payments received in such month...." In the first place, this section simply does not address the issue of payments for more than one month being received in a single month. In fact, a credi-

ble argument could be made that the section merely is addressing situations where many small payments for a single month are made in that same month. (For example, if the monthly support payment is $300 and the absent parent sends three $100 payments in one month, the statute permits only one $50 pass-through and not three $50 pass-throughs for that month). Moreover, when § 602 is read in conjunction with § 657(b)(1), the statute cannot stand for the absolutist proposition that the Secretary is asserting—no multiple pass-throughs under any circumstances. Indeed, the Secretary has taken the position both in the past and in the most recently revised regulations of June 9, 1988 that certain multiple pass-throughs are permitted. (*See infra* Section IV). The Secretary cannot for the purposes of the instant lawsuit argue that § 602 must be given the most narrowly restrictive interpretation possible to prevent any multiple pass-throughs, and yet, at the same time, effect regulations that permit certain multiple pass-throughs. Once § 602 is seen as not being a complete bar to multiple pass-throughs, a position that the Secretary has conceded both prior to and subsequent to this lawsuit, the validity of the Secretary's reliance on such an argument in the current case simply withers away. As the court in *Vanscoter* noted:

> [The] language of § 602(a)(8)(A)(vi) does not establish a congressional intent to allow only one disregard if several pass-throughs are received in one month. HHS has recognized this. In its June 9, 1988 amendment to 45 C.F.R. § 302.51(a), HHS permits multiple disregards of pass-throughs made to an AFDC recipient in one month if each support payment was timely made to a legally accountable public entity. 53 F.R. at 21644. This demonstrates that § 602(a)(8)(A)(vi) does *not* limit the disregards to one $50 item per month; *a fortiori*, it cannot be read to limit pass-through entitlements under the clear language of § 657(b)(1).

*Vanscoter,* slip op. at 6–7.

## III.  STATUTORY PURPOSE

Not only does the plain meaning of the language in § 657(b)(1) comport with the

validity of multiple pass-throughs when multiple payments are received, but the purpose of the statute also demands that conclusion. Section 657(b)(1) was part of the 1984 Amendments to the Social Security Act under the Deficit Reduction Act (DEFRA), Pub.L. No. 98–369, § 2640(b)(1), 98 Stat. 1145. These amendments, for the first time, required that a family's eligibility for AFDC benefits must take into account the income of *all* parents, brothers, and sisters living in the same home. Prior to these amendments, a child receiving child support payments from an absent parent could be excluded from the calculation of AFDC benefits for the rest of the family. The DEFRA Amendments, which required inclusion of such child support payments in calculating total family income for AFDC benefits, thus resulted in reduced AFDC benefits and a net decline of income for many such families.

The Supreme Court has concluded that one of the purposes of the amendments was to offset some of this detrimental impact by implementing the $50 pass-through provision:

> Because the 1984 amendments forced families to include in the filing unit children for whom support payments were being received, the practical effect was that many families' total income was reduced. The *burden of the change was mitigated somewhat* by a separate amendment providing that the first $50 of child support collected by the State must be remitted to the family and not counted as income for the purpose of determining its benefit level.... Thus, the net effect ... [is that] *the reduction would be offset by $50* if that amount was collected from an absent parent.

*Bowen v. Gilliard,* 483 U.S. 587, 107 S.Ct. 3008, 3013, 97 L.Ed.2d 485 (1987) (emphasis added). Thus, despite the Secretary's attempts to classify the $50 as nothing but a bonus, and not related to the financial need of the family, the courts have interpreted this $50 as an integral element of the AFDC support system as envisioned under the DEFRA Amendments:

The intent of that legislation [§ 657(b)(1)] is to enlarge the assistance to the family in raising dependent children. ... § 657(b)(1) affords plaintiffs a right to a $50 pass-through payment which did not exist prior to the passage of DEFRA. The *purpose* of this provision *was to provide eligible families with additional support.* The pass-through provision is *not merely a gratuity* to be honored willy-nilly, *nor is it a bonus* to eligible families simply because they are related to a conscientious support obligor. Rather, it is additional assistance.... An erroneous or unfounded denial of a pass-through would deprive plaintiffs of money to which they are entitled.

*Beasley,* 671 F.Supp. at 921. Yet, the Secretary's regulation, § 302.51, has resulted in the arbitrary denial of the $50 pass-through to many AFDC recipients through no fault of their own.

Even if we were to accept, *arguendo,* the Secretary's contention that the sole purpose of the amendment was to provide a financial incentive for the absent parent to provide timely child support, the Secretary's regulation does not further this purpose. Indeed, it can be seen as having the exact opposite effect.

It does not require much reflection to understand that an estranged spouse who has money withheld from his paycheck but never delivered to his children will be less likely to continue to participate in a withholding program. An interpretation of the legislation that allows a result so clearly contrary to the objective of encouraging the payment of child support cannot accurately represent the true intent of Congress in enacting the statute.

*Wilcox v. Petit,* 649 F.Supp. at 687. *See also Beasley,* 671 F.Supp. at 917 ("A support payment made within a given month, but not forwarded to DAS in the same month because of bureaucratic or postal delays is certainly no basis to penalize the AFDC family."); *Humble,* 116 Ill.Dec. at 512, 519 N.E.2d at 102 ("Under [the Department's] policy ... pass-through payments will be denied even if the child support payment to the circuit court is timely, if the payment is not transmitted from the circuit court to the Department in timely fashion due to bureaucratic delay. There is no rational purpose which is served by denying child support to a needy family because of circumstances which are beyond its control."); *Vanscoter,* slip op. at 8 ("[T]here can be a disincentive for the non-custodial parent to make voluntary payments if the children do not benefit from late payments."). The so-called "incentive" system envisioned by the Secretary, which in practice *punishes* parents who make payments (in that the pass-throughs are not given to their children), might better be called a "disincentive" system. As the court below stated: "No rational purpose is served by denying child support to a needy family because an employer failed to promptly forward funds withheld from a paycheck or because the state itself has not promptly entered the money onto its books." *Wilcox v. Petit,* 649 F.Supp. at 687. Even where child support payments are late through the fault of the absent spouse, limiting pass-throughs to a single $50 does not reasonably advance the purpose of the statute. In the name of encouraging *timely* payment, the regulation removes all incentive to make up late payments, since pass-throughs for prior months are forever lost. Despite the Secretary's assertion to the contrary, the statute nowhere suggests that Congress intended to emphasize timely payment at the risk of discouraging any payment once the deadline passes. Regulation § 302.51 penalizes a recipient family for circumstances entirely beyond its control and thus cannot be said to represent thoughtful reasoned judgment by HHS. We conclude that there is a great disparity between the purpose of the statute and the Secretary's regulation.

Not only does the regulation result in a disincentive for absent parents to pay their child support obligations, it also creates a perverse incentive for the State *not* to pursue vigorously its timely collection of support payments. Under the Secretary's regulation, for each late payment received by the State, the State keeps for itself an

additional $50, rather than transmitting it to the needy family. Surely this could not have been the incentive system intended by Congress.

The Secretary further argues, rather disengenuously, that if multiple pass-throughs are made, "no monies would be available to the state to repay itself for past assistance pursuant to the requirement of § 657(b)(4)." Appellant's Brief at 15. But a system that transmits multiple pass-throughs would result in the precise amount of money being paid to the state that is mandated by the statutory scheme. Section 657(b)(4) states: "such amounts as are in excess of amounts required to be distributed under paragraphs (1), (2), and (3) shall be (A) retained by the State...." Thus, the statute explicitly states that only the *excess* of money collected by the state after distribution to the family of $50 pursuant to § 657(b)(1) is to be retained by the State. Under the Secretary's approach *additional* money is obtained for the State, contrary to the distribution scheme outlined in the statute.

Another argument advanced by the Secretary is that HHS had promulgated a similar regulation regarding pass-through payments in connection with the earlier 1974 Social Security Amendments (effective 1975) (Pub.L. No. 93–647, 88 Stat. 2351 *et seq.*, codified at 42 U.S.C. § 651 *et seq.*), and since Congress did not specifically comment in its 1984 amendments on the Secretary's prior interpretation, Congress must therefore have been satisfied with that prior interpretation. In the first place, it is elementary that congressional inaction cannot be equated with an active affirmance by Congress. *See e.g., Mayburg v. Secretary of Health and Human Services,* 740 F.2d 100, 104 (1st Cir.1984) ("Congress has neither the time nor the inclination to correct every administrative misinterpretation of a prior statute.... [F]ailure to pass a 'revising amendment' does not automatically show that any member of Congress ever thought that an existing administrative interpretation of present law was desirable or correct, much less that Congress intended to 'underwrite' it.").

Second, the purpose of the 1975 statutory provision was completely different from the purpose of the 1984 provision. In 1975, Congress for the first time had enacted legislation which required AFDC recipients to assign their rights to child support to the state. 42 U.S.C. § 602(a)(26). To encourage families to comply, a temporary incentive was instituted which provided recipients with a $20 pass-through payment. 42 U.S.C. § 657(a)(1). *See Prescott v. Commonwealth of Pennsylvania,* 36 Pa. Cmwlth. 251, 387 A.2d 498, 499 (1978). The legislative history of the 1975 statute expressly states that the financial incentive was offered to the custodial parent to enlist her support in *identifying* the absent parent.

> The Committee bill would make *cooperation in identifying the absent parent* a condition for AFDC eligibility. However, the Committee feels it may be desirable to offer the mother a financial incentive to cooperate. To demonstrate the possible effectiveness of such an incentive, the Committee bill for the first year of the program provides that 40 percent of the first $50 a month in support collections for a family would be disregarded for purposes of determining the amount of welfare payments to the family. Thus, during this period, the family would always be better off if support payments are made by the absent parent.

S.Rep. No. 1356, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. and Admin. News, 8133, 8155 (emphasis added). While we believe, as discussed *supra,* that a main purpose of the $50 pass-through in the 1984 statute was to mitigate against the severe impact of the filing unit changes instituted at that time, even were we to accept *arguendo* the Secretary's position that the main purpose was to promote timely support payments by the absent parent, it is clear that either of these purposes is quite distinct from the expressly stated purpose of the 1975 statute of simply "identifying" the absent parent. Thus, the provisions, though similarly worded, accompanied statutes that were implementing very different aspects of the

AFDC program, and were intended to accomplish quite different objectives.

Moreover, the 1975 pass-through payment was only a 15 month *transitional* provision to aid in the inception of the program; it expired on September 30, 1976. 42 U.S.C. § 657(a)(1). For the Secretary to now argue that the new 1984 statutory provision, enacted after a similarly worded provision had been dead for eight years, implies that Congress knew and approved of the Secretary's regulation pursuant to the prior provision and intended to resurrect it from moribundity is simply not tenable.

## IV. INCONSISTENT AGENCY REGULATIONS

An examination of the various regulations proposed and promulgated by the Secretary regarding the $50 disregard of child support payments since passage of DEFRA is also quite instructive. It reveals a pattern of vacillating, inconsistent rules, many of which are in direct conflict with the position taken by the Secretary in the instant case.

45 C.F.R. § 302.51, as originally published on September 10, 1984, required that the first $50 collected on a monthly support obligation be paid to the AFDC family, and that such an allocation was applicable to "collections of current support only, not to collections of arrearages." 49 Fed.Reg 35605 (1984). On September 19, 1984, however, the Secretary proposed a version of the rules which defined the "date of collection" such that the $50 pass-through would apply to collection of arrearages if the delay was the fault of the employer in wage withholding cases, or the collecting state in interstate cases. These proposed rules stated:

> The *date of collection* shall be the date on which the payment is received by the IV–D agency or the legal entity of the State or political subdivision actually making the collection on behalf of the IV–D agency, except that:
>
> (1) For purposes of *interstate collections*, the date of collection shall be *the date on which the payment is received*

> *by the IV–D agency of the State in which the collection is made....*
>
> (2) For purposes of *wage withholding*, the date of collection shall be *the date the employer withholds the wages* to meet the support obligation.

49 Fed.Reg. 36797 (1984) (emphasis added). Thus, these proposed regulations would have allowed for multiple pass-throughs to the AFDC family in precisely the kind of situations that confront many of the plaintiff class in this current action. Indeed, the Secretary himself stated that these proposed changes in the regulations were dictated by the statute:

> *We are making these changes* under the authority of section 1102 of the Act in order to distribute payments as current support in interstate cases and in cases where multiple withholding payments are submitted in a lump sum to the IV–D agency. Thus, the IV–D agency will be able *to distribute these payments as intended by the statute and to avoid possible inequities* resulting from delays in forwarding payments by employers or responding states in interstate cases.

49 Fed.Reg. 36786 (1984) (emphasis added). The Secretary reiterated this sentiment the following year, "[T]his change was proposed because the regulation as it was written did not allow for accurate distribution when current support was collected but not received until a later date by the IV–D agency making the final distribution." 50 Fed.Reg. 19634 (1985). Yet, in response to comments from various states that the proposed rules would create accounting problems from the high cost of reprogramming their systems, distribution problems from retroactive claims, and monitoring problems, the Secretary withdrew the proposed changes. *Id.* This withdrawal was not the result of any statutory mandate, but rather resulted purely from complaints by the states of potential accounting problems. Thus, despite explicit acknowledgement by the Secretary himself that *the statute required the changes* and that without them inequities would occur, he succumbed to the states' comments and

put into place a rule which was expressly contrary to the statute.

This flouting of the statute resulted in the regulation at issue, § 302.51(a), being published:

> For the purposes of distribution ... amounts collected shall be treated first as payment on the required support obligation for the month in which the support was collected and ... [any] excess amounts shall be treated as amounts which represent payment on the required support obligation for previous months.... *The date of collection shall be the date on which the payment is received by the IV–D agency ....* For purposes of interstate collections, the date of collection shall be the date on which the payment is received by the IV–D agency in the State in which the family is receiving aid.

50 Fed.Reg. 19648 (1985) (emphasis added). AFDC families were thus deprived of money that was mandated by Congress in situations where on-time payments were made by the absent parent, but which were delayed in transfer by an employer or an agency from a different state.

The Secretary made another flip-flop on June 9, 1988. The rule was revised to permit the $50 pass-through in interstate cases where the child support payment is made by the absent parent to the out-of-state agency on time, but is not forwarded by that agency to the agency in the distributing state on time. "Date of collection" is now defined as "the date a payment is received by the IV–D agency or the legal entity of the State or political subdivision actually making the collection, whichever is earliest." 53 Fed.Reg. 21642 (1988). But no comparable change was made for on-time payments to an employer who is withholding wages and does not forward these wages to the state agency on time. And yet, the Secretary's own justification for his reversal on interstate cases should apply to the employer wage withholding situation as well:

> Th[e] revision to the definition of the date of collection will reduce the possibility that payments made on time will be distributed as payments on arrearages because of delays in transmitting collections between legal entities of the State or between States. It also furthers the intended purpose of the statute, i.e. to encourage voluntary and timely compliance with support orders.... Deleting this definition [of the date of collection] will ensure payment of $50 to the AFDC family when support is paid timely and avoid possible inequities resulting from delays in forwarding payments by responding States in interstate cases.

53 Fed.Reg. 21643 (1988). Once again, while the Secretary's own logic would seem to require that timely payments by absent parents to employers should also require pass-throughs to the AFDC family to "avoid possible inequities," HHS nevertheless has barred such payments.

What is revealed by the history of the Secretary's regulations on the pass-through requirement since the amended statute was passed in 1984 is a series of self-contradictory rules. And although the Secretary explicitly acknowledged at various times that the statute required multiple pass-throughs for certain arrearage payments, many of the plaintiffs have found themselves denied those very pass-throughs.

It should be noted that throughout this period of changing proposals and regulations, the Secretary *never* alluded to § 602 of the statute as precluding multiple pass-through payments. Indeed, as noted *supra*, the Secretary has stated on various occasions that the intent of the statute was to permit multiple pass-throughs if delays were the fault of out-of-state collecting agencies or employers. And even the regulation currently in effect (instituted after the instant lawsuit was initiated) partially incorporates this position, in that it permits such multiple pass-throughs if the delay is caused by an out-of-state agency. For the Secretary to now be arguing in the instant case that § 602 is an absolute bar to multiple pass-throughs is in direct conflict with the very evolution of the regulations that HHS has been involved in shaping over the years.

Since HHS itself has conceded at various times (including in the most recent June 9, 1988 regulation) that at least under certain situations multiple pass-throughs are not contrary to the statute, § 602 cannot be used as the source for a complete bar to multiple pass-throughs. Once this prop is removed, appellants are left with no support for the position that the statute imposes an absolute monthly $50 cap on pass-throughs, other than blind deference to the agency regulation itself.

## V. DEFERENCE TO THE AGENCY

The Secretary's final argument invokes the well established rule that an agency charged with the enforcement of a statute is entitled to substantial deference in its interpretation of that statute. The Supreme Court, however, has repeatedly held that deference to an agency's decision must be tempered by an analysis of the language, purpose, and history of the statute. *See, e.g., Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority*, 464 U.S. 89, 98 n. 8, 104 S.Ct. 439, 444 n. 8, 78 L.Ed.2d 195 (1983) ("When an agency's decision is premised on its understanding of a specific congressional intent ... it engages in the quintessential judicial function of deciding what a statute means. In that case, the agency's interpretation ... may be influential, but it cannot bind a court"); *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) (the courts "must reject administrative constructions of the statute ... that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement"); *Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979) ("[D]eference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history."); *NLRB v. Brown*, 380 U.S. 278, 291–292, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965) ("Reviewing courts are not obliged to stand aside and rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a stat-

ute.... [C]ourts would abdicate their responsibility if they did not fully review such administrative decisions."); *American Ship Building v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965) ("The deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress."). In addition, the Administrative Procedure Act states that:

> [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall....
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

5 U.S.C. § 706.

We have also directly addressed this point. *See St. Luke's Hospital v. Secretary of Health and Human Services*, 810 F.2d 325, 331–332 (1st Cir.1987) (deference to the agency's view of a statute is appropriate only if the statute is ambiguous; even if ambiguous, the weight given to the agency's judgment will turn on (i) whether or not the agency knows more about what Congress had in mind than the court, taking into account the thoroughness, validity, and consistency of the agency decision, (ii) whether Congress delegated the law-declaring function to the agency, and (iii) whether the agency's interpretation is wrong vis-à-vis the language and purpose of the statute); *Mayburg v. Secretary of Health and Human Services*, 740 F.2d at 106 (deference is not complete and the "agency ultimately must depend upon the *persuasive power* of its argument.... [I]n this instance, HHS has not interpreted the statute as Congress meant.").

These general admonitions for judicial review of agency decisions are even more exacting when the courts are faced with

inconsistent agency positions, as in the instant case. *See, e.g., Immigration and Naturalization Service v. Cardoza-Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view."); *Southeastern Community College v. Davis,* 442 U.S. 397, 411–412 n. 11, 99 S.Ct. 2361, 2370 n. 11, 60 L.Ed.2d 980 (1979) ("[T]he assertion by HEW of the authority to promulgate any regulations ... has been neither consistent nor longstanding.... This fact substantially diminishes the deference to be given to HEW's present interpretation of the statute."); *General Electric Co. v. Gilbert,* 429 U.S. 125, 143, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976) ("We have declined to follow administrative guidelines in the past where they conflicted with earlier pronouncements of the agency."); *Skidmore v. Swift and Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) ("The weight of such [an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

The First Circuit has also expressed a clear position on the effect of inconsistent agency positions. *See St. Luke's Hospital,* 810 F.2d at 331 ("Here, the agency has changed its views, at some times taking the position that we now find correct.... This inconsistency detracts considerably from the force of the Secretary's present view...."); *Mayburg v. Secretary of Health and Human Services,* 740 F.2d at 106 ("An interpretation that has proved to be administratively workable because it is consistent and longstanding is typically more persuasive....").

While the Secretary points to a line of cases purportedly requiring the court to defer to the agency, these cases also counsel that deference is appropriate only if the agency's interpretation is consistent with the language, purpose, and legislative history of the statute. *Lukhard v. Reed,* 481 U.S. 368, 107 S.Ct. 1807, 1813–1814, 95 L.Ed.2d 328 (1987) (Virginia's treatment of personal injury awards is consistent with the administrative and legislative history of the AFDC statute and thus entitled to deference); *Connecticut Department of Income Maintenance v. Heckler,* 471 U.S. 524, 528, 105 S.Ct. 2210, 2212, 85 L.Ed.2d 577 (1985) ("In our view ... the State's position is foreclosed by the plain language of the statute, by the Secretary's reasonable and longstanding interpretation of the Act, and by the Act's legislative history."); *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984) (if a statute is ambiguous, an agency's interpretation should not be disturbed "unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned," quoting *United States v. Shimer,* 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)); *Blum v. Bacon,* 457 U.S. 132, 142, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982) ("In light of the strong support in the legislative history for the Secretary's conclusion ... we find such deference particularly appropriate in this case."); *Schweiker v. Hogan,* 457 U.S. 569, 586, 102 S.Ct. 2597, 2607, 73 L.Ed.2d 227 (1982) (The legislative history did not justify a departure from the literal language of the Social Security Act.).

In light of the repeated and longstanding pronouncements on the issue of deference when an agency's decision is at odds with the language, purpose, and history of a statute, we must conclude that in the instant case, deference should not be accorded to the Secretary's interpretation. The language, purpose, and history of the AFDC statute, as well as the inconsistent regulations, proposals, and statements by the agency, all counsel against deferring to the agency in this case. Deference is not appropriate when an agency's interpretation has radically and repeatedly alternated between polar extremes and which in the time frame of the instant lawsuit had settled on a particular interpretation which defies common sense. The agency has

abused its discretion in promulgating a regulation which is directly contrary to the congressional mandate of the statute. Under the guise of interpretation, the Secretary has effected a fundamental change in the purpose of the statute.

## VI. MULTIPLE DISREGARDS

■ Once it is acknowledged that § 657(b)(1) permits multiple pass-through payments, there can be no question that it also requires disregarding each of those multiple pass-throughs in calculating an AFDC family's benefits. The only way to make sense of the statute as a whole, is that multiple payments and multiple disregards must be seen as inextricably intertwined. Any other interpretation would defeat the very purpose of the statute and be nonsensical. *See, e.g., Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). The statute itself *expressly* mandates such multiple disregards when multiple pass-throughs are appropriate:

> [T]he first $50 of such amounts as are collected periodically which represent monthly support payments shall be *paid to the family without affecting its eligibility for assistance* or decreasing any amount otherwise payable as assistance to such family during such month.

42 U.S.C. § 657(b)(1) (emphasis added).

While the Secretary argues that a strictly literal reading of § 602 does not permit multiple disregards, as we have discussed *supra,* even the Secretary himself does not in practice endorse such a myopic position. In sum, we believe that the essence of the multiple pass-through provision in the statute includes multiple disregards.

## VII. CONCLUSION

We affirm the district court's order and hold that regulation § 302.51 is invalid because it impermissibly contradicts § 657(b)(1) of the statute. Section 657(b)(1) requires that the states make multiple pass-throughs to AFDC recipients when the state receives more than one child support payment in a given month. It also mandates that these multiple pass-through payments be disregarded so as not to affect the family's eligibility for assistance.

AFFIRMED.

BREYER, Circuit Judge (concurring).

I concur for two reasons. First, several other courts have issued opinions that support the panel's decision. *See Vanscoter v. Bowen,* No. C86–1568WD, slip op. at 5 (W.D. Wash.1988); *Beasley v. Harris,* 671 F.Supp. 911 (D.Conn.1987); *Humble v. Department of Public Aid,* 165 Ill.App.3d 624, 116 Ill.Dec. 509, 512, 519 N.E.2d 99, 102 (1988); *see also Golden v. Department of Public Aid,* 150 Ill.App.3d 617, 103 Ill. Dec. 473, 477, 501 N.E.2d 790, 794 (1986). Second, a contrary decision would not significantly affect AFDC law. Congress has recently enacted legislation that, for the future, adopts the Secretary's view. The $50 "pass through" will apply to a monthly child support payment only if the absent parent makes it in the month when it is due. Family Support Act of 1988, Pub.L. No. 100–485, § 102; *see also* S.Rep. No. 100–377, 100th Cong., 2d Sess. at 17 (1988); H.R.Rep. No. 100–998, 100th Cong., 2d Sess. at 98 (1988) U.S.Code Cong. & Admin. News pp. 2776, 2794, 2886 ("Joint Explanatory Statement of the Committee of Conference").

Were it not for these special features, making it pointless, and somewhat inappropriate, to dissent, I should do so. The Secretary says that Congress wanted to treat AFDC families with similar needs similarly; that an absent parent's support payments should not make one such family better off than another; and that Congress made only a small exception, to the extent of $50 when an absent parent makes a child support payment *on time.* This principle, says the Secretary, explains the opaque statutory language. And, the Secretary's view is a reasonable one.

In a case like this one, where the statutory provision is minor and interstitial,

where the agency has a firm understanding of the relationship of that provision to other, more important, provisions of the statute, and where that understanding grows out of both the agency's daily experience in administering its statute and its familiarity with the initial legislative drafting process, the Secretary's argument has considerable "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). And, I should think, were it not for the two special features of this case mentioned above that we should follow his interpretation. *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 844–45, 104 S.Ct. at 2782–83 (1984); *Mayburg v. Secretary of Health and Human Services*, 740 F.2d 100, 105–06 (1st Cir.1984).