**COMMONWEALTH OF MASSACHU-SETTS, by its DEPARTMENT OF PUBLIC WELFARE, Plaintiff,**

v.

**Clayton YEUTTER, Secretary of the United States Department of Agriculture, Defendant.**

**Civ. A. No. 89–0789–H.**

United States District Court, D. Massachusetts.

Feb. 5, 1991.

Jon Laramore, Asst. Atty. Gen., Boston, Mass., for plaintiff.

Steven Savner, Mass. Law Reform Institute, Melanie Malherbe, Greater Boston Legal Services, Boston, Mass., for Coalition for Basic Human Needs.

Richard Thornburg, Atty. Gen., Sheila Lieber, David M. Souders, Margaret H. Plank, Attys., Dept. of Justice, Civ. Div., Asst. U.S. Atty. Paul Levenson, of counsel, John Daugherty, Rachel H. Bishop, Staff Atty., General Counsel's Office, U.S. Dept. of Agr., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

This action arises out of the review and disapproval by the Secretary of Agriculture (the "Secretary") of the fiscal year 1989 state plan for administration of the Food Stamp Employment and Training ("FSET") Program in the Commonwealth of Massachusetts (the "Commonwealth"). Both parties have filed motions for summary judgment,[1] asking this Court to determine whether the Secretary's refusal to grant approval of the Commonwealth's FSET plan was lawful under the applicable provisions of the Food Stamp Act, 7 U.S.C. § 2011, *et seq.*, and the Secretary's regulations.[2]

The Secretary contends that Congress delegated to him the broad authority to administer the Food Stamp Program and to engage in substantive review of the FSET provisions of state plans. Thus, the Secretary argues, disapproval of the Commonwealth's 1989 plan was lawful upon the Secretary's determination that certain elements of the plan violated both the broad mandates of the Food Stamp Act and the specific regulations governing FSET programs. The Commonwealth maintains that its plan satisfied all applicable legal requirements and, thus, that the plan should have been approved. The thrust of the Commonwealth's oral argument before this Court, however, is that the Secretary failed to follow proper procedure in deciding to disapprove the Commonwealth's 1989 plan and that the Secretary acted arbitrarily by treating the Commonwealth differently throughout the process from all other states whose plans were reviewed.

*The Food Stamp Program*

Congress implemented the Food Stamp Act (the "Act"), 7 U.S.C. § 2011, *et seq.*, to supplement the nutritional needs of low-in-

---

1. It is evident from the parties' cross motions for summary judgment that no material facts remain in dispute in this case. Therefore, the Court may proceed to determine which party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

2. The Commonwealth's Amended Complaint actually contains seven counts. The Complaint charges the Secretary in four counts with unlawful refusal to approve the fiscal year 1989 plan and in one count with a violation of the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.* The Complaint also asserts in one count that the fiscal year 1989 plan was deemed approved by the failure of the Secretary to take action. The Commonwealth's Prayer for Relief seeks both declaratory relief to establish the lawfulness of its 1989 plan and injunctive relief to require the Secretary to approve the plan and to pay the Commonwealth those funds withheld in connection with the disapproval of its plan. At the hearing upon the parties' motions, however, both parties agreed that the sole dispute to be resolved is the lawfulness of the Secretary's decision to disapprove. Should this Court find the Secretary's action to be unlawful, summary judgment will be entered for the plaintiff and the Secretary will release all federal funds withheld in connection with the disapproval of the Commonwealth's plan. Should this Court find the action to be lawful, summary judgment will be entered for the defendant and no funds will be paid to the Commonwealth.

come households. Food stamps are distributed free of charge to eligible families and may be used to purchase food at certain markets. 7 U.S.C. § 2016(b). The Food and Nutrition Service of the United States Department of Agriculture ("USDA") administers the Food Stamp Program on the federal level, while each participating state designates a state agency to carry out the day-to-day operations of the program on the state level. USDA reimburses the states for 50 percent of the administrative costs of the state program. 7 U.S.C. § 2025(a).

Under the Act all food stamp recipients, unless otherwise exempt,[3] between the ages of sixteen and sixty who are physically and mentally fit, must register for employment and participate in an Employment and Training (FSET) Program. 7 U.S.C. § 2015(d)(1). The Act requires each state to design and implement a FSET program, comprised of specific employment and training components, *see* 7 U.S.C. § 2015(d)(4)(B), to assist food stamp recipients "in gaining skills, training, or experience that will increase their ability to obtain regular employment." 7 U.S.C. § 2015(d)(4)(A). Each year the state must submit for approval by the Secretary a state plan "specifying the manner in which [the state's FSET program] will be conducted" in the upcoming fiscal year. 7 U.S.C. § 2020(d). The Secretary is authorized to promulgate guidelines and regulations which enforce the requirements set forth in the statute and to withhold funds upon a state's failure to comply. 7 U.S.C. §§ 2013(c), 2015(d)(4)(M).

*Factual Background*

On August 13, 1987 the Commonwealth submitted for approval its fiscal year 1988 state plan for operation of Massachusetts' FSET program, and the Secretary granted approval of the plan. In December, 1987 and January, 1988 the Northeast Regional Office of the Food and Nutrition Service ("FNS") conducted an on-site review of the operation of the Commonwealth's program.

Following visits to three state offices which administered the FSET program, FNS determined that the Commonwealth was not in compliance with statutory and regulatory requirements regarding both mandatory participation by recipients and sanction procedures. FNS notified Massachusetts of its decision and of the potential for administrative penalties being imposed should the Commonwealth fail to take appropriate corrective action. The Commonwealth responded in a letter to USDA, claiming that Massachusetts' program met all legal requirements and disputing the need for corrective action.

On August 11, 1988 FNS issued a formal warning to the Commonwealth. FNS indicated that the Commonwealth faced potential suspension and/or disallowance of federal funds for administration of the Commonwealth's Food Stamp Program due to its failure to comply with the Secretary's regulations, 7 C.F.R. § 273.7(c) and (f). FNS further stated that the Commonwealth would be required to execute appropriate operational changes within thirty days or incur an administrative penalty of $210,000 in federal funds per quarter, retroactive to January, 1988. The Commonwealth was directed to submit an approved plan—one identifying mandatory participants, setting forth procedures for informing mandatory participants of their employment and training obligations, and disqualifying those who failed to comply. Again the Commonwealth insisted that its program met all legal requirements, and it requested that the warning be withdrawn.

On or about the same time that the Commonwealth received FNS' formal warning, the Commonwealth submitted its fiscal year 1989 state plan to the Secretary. The 1989 plan was nearly identical in all respects to the 1988 plan. A series of negotiations and communications then ensued between the Commonwealth and USDA. USDA emphasized that the Commonwealth's 1989 plan would not receive approval unless the Commonwealth incorpo-

---

**3.** Section 2015(d)(2) sets forth certain categories of individuals who are statutorily exempt from the employment requirements.

rated specific amendments into the plan to address the concerns raised in the August warning.[4]

On October 7, 1988, the Commonwealth, under protest, revised its 1989 plan to satisfy USDA's objections. On October 25, 1988 USDA stated that it was "prepared to approve" the revised plan. However, USDA would grant that approval only upon the condition that the Commonwealth implement the proposed revisions within two weeks. USDA later extended the implementation period to thirty days. The Commonwealth objected to USDA's refusal to approve the plan, as amended, and it challenged the time frame established for implementation. The Commonwealth proposed implementation of all operational changes by March 1, 1989. On January 19, 1989 USDA notified the Commonwealth that the March 1 date was unacceptable. USDA further informed the Commonwealth that the 1989 state plan would not receive retroactive approval.

The Commonwealth finally achieved compliance with USDA's requests on March 20, 1989. The Secretary approved the Commonwealth's plan on June 30, 1989, but USDA refused to reimburse the Commonwealth for $4,390,882 in administrative expenses incurred during the period October 1, 1988 through March 20, 1989, because the Commonwealth was not operating under an approved plan during that period. Since March 20, 1989 the Commonwealth has operated its FSET program in a manner consistent with the provisions of its revised 1989 plan. The Secretary has approved and funded the Commonwealth's 1990 and 1991 plans.

## DISCUSSION

In this action, the Commonwealth challenges the Secretary's conduct in linking approval of the Commonwealth's 1989 plan to the Commonwealth's willingness to undertake, and its ability to implement, corrective measures with respect to its 1988 plan. In particular, the Commonwealth construes the Act as directing the Secretary to consider only "the four corners of the plan" during the approval process. Under the statute, the Commonwealth argues, the Secretary must utilize the administrative penalty process—not the approval process—to redress perceived deficiencies in a state's operation of its FSET program. The Commonwealth asserts, therefore, that the Secretary improperly considered matters relating to the actual operation of the Commonwealth's plan when he required the Commonwealth to implement specific changes in its 1989 plan before granting approval. The Commonwealth further asserts that the Secretary treated Massachusetts differently from other states by requiring full implementation of changes prior to approval and by refusing to grant retroactive approval once implementation was complete.[5]

*The Standard of Review*

In reviewing the Secretary's action, the Court must follow the two-step process set

**4.** FNS specifically challenged four elements of the Commonwealth's program: (1) the state's operation of its FSET program on a "volunteers-first" basis; (2) the proposed categorical exemption of all pregnant women; (3) the proposed categorical exemption of the second parent in two-parent households; and (4) the state's implementation of a 60–day conciliation period for all mandatory participants who failed to register for the program.

**5.** At the hearing the Commonwealth offered no evidence of the specific circumstances surrounding the approval decisions in any of the other forty-two states cited by the Commonwealth as receiving more favorable treatment by the Secretary. Allegedly each of these states received either conditional approval of its plan, pending revisions, or retroactive approval of the plan upon implementation of required changes.

The Commonwealth did not receive either. However, the Secretary asserts that no other state refused, as the Commonwealth did, to undertake the revisions suggested by the Secretary; rather, all other states indicated a willingness to cooperate with the Secretary in order to bring their plans into compliance. Thus, the Secretary argues, the circumstances surrounding the approval of the Commonwealth's plan warranted a different course of action. On the basis of this record, this Court has no means by which to evaluate whether Massachusetts was, in fact, treated differently and whether such treatment was arbitrary under the circumstances. The Court, therefore, will address its attention to the Commonwealth's first argument; namely, that the Secretary acted improperly in withholding approval of the Commonwealth's plan.

forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Commonwealth of Massachusetts v. Lyng*, 893 F.2d 424, 428 (1st Cir.1990) ("review of the Secretary of Agriculture's interpretation of the Food Stamps Act is governed by [*Chevron* ]"). The Court must decide first "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781. If the meaning of the statute is clear with respect to that question, the Court must enforce the "unambiguously expressed intent of Congress." *Id.* If, however, the statute does not squarely address the question at issue, the Court must determine whether the Secretary's action "is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

■■■ Usually the Court will defer to the Secretary's interpretation of its mandate. Indeed, the Court may not substitute its judgment for that of the agency; it must uphold an agency decision where there is a rational basis to support it. *NLRB v. United Food & Commercial Workers*, 484 U.S. 112, 123, 108 S.Ct. 413, 420, 98 L.Ed.2d 429 (1987); *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 290, 95 S.Ct. 438, 444, 42 L.Ed.2d 447 (1974); *Conservation Law Foundation v. Secretary of Interior*, 864 F.2d 954, 957–58 (1st Cir. 1989). As long as the statute "does not foreclose" the Secretary's interpretation, the Court will accept it as "a permissible one." *Sullivan v. Everhart*, — U.S. —, 110 S.Ct. 960, 966, 108 L.Ed.2d 72 (1990). Only a showing that the Secretary's decision was "arbitrary and capricious" will overcome the presumption of its validity. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *see also Everhart*, 110 S.Ct. at 966 (requiring respondents to show that the language of the statute "cannot bear the interpretation adopted by the Secretary").

Thus, this Court examined the language, history and design of the Food Stamp Act, *see K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (setting forth factors for consideration in ascertaining plain meaning of the statute), to establish whether Congress had an actual intent regarding the standards of approval and disapproval of state FSET plans. The Court carefully explored the Commonwealth's argument that the Act compels the states to meet only minimal statutory requirements to gain the approval of the Secretary and, thus, that approval may not be withheld to force operational changes in a state program. Upon examination, this Court cannot conclude that the Act manifests an "unambiguously expressed intent" with respect to this question. Indeed, the language and history of the Act lend support to both the idea that the Secretary may review only the content of the plan to ensure that it meets the statutory requirements of the Act and to the idea that the Secretary may exercise his approval authority to ensure that the program actually works. Given this ambiguity, this Court should defer to the Secretary's interpretation of his approval authority under the Act as long as that interpretation is "permissible." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781; *see also Commonwealth of Massachusetts v. Lyng*, 893 F.2d at 430–431.

*The Decision to Disapprove*

■■■ There can be no doubt that Congress intended the Secretary to have the ultimate authority to review and to approve or disapprove each state's proposed FSET plan. The Act provides that each state "shall implement [a FSET program] designed by the State *and approved by the Secretary* ..." 7 U.S.C. § 2015(d)(4)(A) (emphasis added). Congress fully expected

> [T]he Secretary to use the authority the Act provides to ensure that all States design a program that is in keeping with the purposes of [the] Act and this employment and training section.

H.R.Rep. No. 271, 99th Cong., 1st Sess. 153, *reprinted in* 1985 U.S.Code Cong. & Admin.News 1103, 1257; *see also* 131 Cong. Record 37567 (Dec. 18, 1985) (providing for review "of a substantive nature"). In reviewing a state plan, the Secretary

must realize that each state has been granted the flexibility to design a program that "[meets] the needs in that area." H.R.Rep. No. 271, 99th Cong., 1st Sess. 153, *reprinted in* 1985 U.S.Code Cong. & Admin.News 1257 (indicating that "flexibility is an essential part of [the FSET program]"). However,

> [i]f there is too much flexibility and too many loopholes, ... and if [the Secretary] decides that [a program] does not [work], he disapproves it.

H.R.Rep. No. 447, 99th Cong., 1st Sess., *reprinted in* 1985 U.S.Code Cong. & Admin.News 2567. Clearly, "the Secretary retains the final authority to say yes or no on the program." *Id.; see also id.* at 2564.

Given that the Secretary is authorized and *expected* to undertake a substantive review of state plans, the Commonwealth is incorrect in asserting that the review is restricted to the "four corners" of the plan. Though it is true that the Act places limits on the Secretary's ability to request certain documentation from the state, *see* 7 U.S.C. § 2020(d), the Act nevertheless empowers the Secretary to examine fully the "nature and extent" of each state's plan. 7 U.S.C. § 2020(e)(22) (setting forth information to be included in state's plan of operation). In this Court's view, the "nature and extent" of the FSET program may properly include information concerning the actual operation of the program. If this were not so, a state could draft a plan that, on its face, satisfied the formal submission requirements, but that, in reality, operated in a way that failed to fulfill the requirements of the Act. The Secretary's approval, then, would be meaningless and would function as a mere rubber stamp rather than as a mechanism for promoting the uniform purposes of the Act.

In addition, the statute does not "foreclose," *see Everhart*, 110 S.Ct. at 964, 966, the Secretary's judgment that he should review the plan not only as drafted, but also as *implemented* by the state, before granting his approval. As discussed, authority to review the state's implementation may be inferred from the language directing the Secretary to examine the "nature and extent" of the program. This authority may also be inferred from Congress' desire that the Secretary perform annually a "substantive review" of each state's program. This Court concludes that it was permissible for the Secretary to weigh the Commonwealth's perceived operational deficiencies regarding its 1988 plan in reaching the decision to approve or disapprove the 1989 plan, particularly where the 1988 plan and the 1989 plan were virtually identical. Indeed, it would have been illogical for the Secretary to "approve" a plan that he had previously determined violated the Act.[6]

Since the Secretary had the authority to disapprove the Commonwealth's plan for failure to comply with the Act, the Court rules that the Secretary properly withheld funding for that plan until such non-compliance was remedied. In particular, the statute directs the Secretary to "ensure that State agencies comply with [the employment and training provisions of the Act]." 7 U.S.C. § 2015(d)(4)(M)(i). If the Secretary determines that a state agen-

---

6. As indicated earlier, the Commonwealth in this motion challenged the approval procedure followed by the Secretary; the Commonwealth did not pursue its challenge to the four elements relied upon by the Secretary as grounds for disapproval. However, this Court carefully has reviewed the language of the Act, its legislative history, and the Secretary's regulations, and has concluded that the Secretary had a rational basis for disputing the four specific elements of the Commonwealth's program. Thus, the Court will defer to the Secretary's interpretation of these specific FSET requirements. *See Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781; *Bowman Transportation*, 419 U.S. at 290, 95 S.Ct. at 444. Moreover, the Court finds direct support for the Secretary's positions concerning "mandatory participation" and "exemptions for second-parents." Recent amendments to the Food Stamp Act suggest that Congress previously did not contemplate that states would implement FSET programs on a purely voluntary basis. *See* Food, Agriculture, Conservation, and Trade Act, Pub.L. No. 101–624, § 1726(c) (1990) (permitting two states, after approval by the Secretary, to conduct FSET programs giving priority to voluntary participants). Similarly, the legislative history indicates that Congress specifically sought to eliminate the "second parent" exemption. *See* S.Rep. 145, 99th Cong., 1st Sess. 249, *reprinted in* 1985 U.S.Code Cong. & Admin. News 1915.

cy has failed to comply with those requirements, the statute permits the Secretary to "*withhold* [from the state] *such funds as the Secretary determines to be appropriate.*" *Id.* at (d)(4)(M)(ii) (emphasis added). Given this language, this Court determines that it is permissible for the Secretary to refuse to fund a program, like the Commonwealth's program, that fails to obtain the Secretary's approval.

However, the Commonwealth contends that the Secretary can withhold funds only under the provisions of the administrative penalty process set forth in Section 2020(g) of the Act. That section, like Section 2015, permits the Secretary, after informing the state of its failure to comply with the Act and allowing the state sufficient time to take corrective action, to withhold from the state "such funds as the Secretary determines to be appropriate." 7 U.S.C. § 2020(g). The Secretary's decision to withhold funds—or to impose administrative penalties—under this provision is subject to comprehensive administrative and judicial review, *see id.;* 7 C.F.R. § 276.7; however, the Secretary's decisions regarding approval or disapproval of state plans are not reviewable. Thus, the Commonwealth argues, the Secretary impermissibly circumvented the administrative process by using his approval power to withhold funds from the Commonwealth.

While the Court recognizes the harsh financial consequences to the Commonwealth of the Secretary's decision to disapprove the plan, rather than to impose administrative penalties,[7] the Court cannot invalidate the Secretary's decision. This Court has already concluded that the Secretary possesses the broad authority under Section 2015 to review and to approve or disapprove a proposed state FSET plan. In the view of the Secretary, and this Court, the concomitant authority to refuse to fund an *unapproved* plan flows logically and directly from the power to disapprove. Certainly, the language of Section 2015

does not *prevent* the Secretary from exercising his authority to withhold funds from the time of disapproval. Section 2015(d)(4)(M) makes no reference to the administrative penalty process of Section 2020(g). Section 2015 simply directs the Secretary to ensure the states'·compliance with the Act and permits him to withhold funds upon a determination of non-compliance. Moreover, it is *reasonable* that if a plan is disapproved *ab initio*, funds should be withheld from the date when the plan would have commenced, rather than at some later date. Thus, since the Act may be read to allow the Secretary to withhold funds as he did in this case, the Court will not construe it otherwise. *See Everhart*, 110 S.Ct. at 966 (upholding Secretary's interpretation where "the Act reasonably bears [that interpretation]"); *see also Chevron*, 467 U.S. at 843–44, n. 11, 104 S.Ct. at 2782, n. 11 (noting that "permissible construction" may not be the only construction of the statute nor "even the reading the court would have reached if the question initially had arisen in a judicial proceeding"). In fact, were this Court to interpret the statute to require the Secretary to fund the Commonwealth's program—a program that the Secretary properly disapproved—pending the outcome of formal administrative proceedings, the Court would essentially negate the Secretary's approval power. Such a result certainly would contravene Congress' intent to secure the full exercise of that power.

Therefore, this Court upholds the Secretary's refusal to approve and to fund the Commonwealth's 1989 plan pending implementation of specific operational changes. In light of the language of the Act and its legislative history, the Secretary's interpretation of his authority to approve and disapprove is, indeed, a permissible one. The Court finds that the Secretary acted in a manner consistent with his broad authority to undertake a substantive review of all state plans and to ensure that all FSET

---

7. The Secretary refused to reimburse the Commonwealth for $4,390,882 in administrative costs incurred during the period October 1, 1988 through March 20, 1989—the period in which the Commonwealth was operating its FSET program under an unapproved plan. Had the Secretary invoked the administrative penalty of $210,000 per quarter, the total penalty would have been approximately $420,000.

programs successfully advance the substantive work policy which Congress intended. Defendant's Motion for Summary Judgment is hereby granted.