COMMONWEALTH OF MASSACHUSETTS by its DEPARTMENT OF PUBLIC WELFARE, Plaintiff, Appellant,

v.

Clayton YEUTTER, Secretary United States Department of Agriculture, Defendant, Appellee.

No. 91–1226.

United States Court of Appeals, First Circuit.

Heard July 31, 1991.

Decided Oct. 23, 1991.

Rehearing Denied Dec. 3, 1991.

---

Jon Laramore, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., was on brief, Boston, Mass., for appellant.

Margaret H. Plank, with whom Marleigh D. Dover, Attys., Civil Div., Dept. of Justice, Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., and Wayne A. Budd, U.S. Atty., Boston, Mass., were on brief, for appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and HILL,* Senior Circuit Judge.

* Of the Eleventh Circuit, sitting by designation.

BOWNES, Senior Circuit Judge.

The Commonwealth of Massachusetts (the "Commonwealth") appeals the district court's ruling that the Secretary of Agriculture (the "Secretary") acted within his authority in withholding funding for the Commonwealth's administration of its Food Stamp Employment and Training ("FSET") program for the Fiscal Year ("FY") 1989. The district court granted the Secretary's motion for summary judgment, holding "that the Secretary acted in a manner consistent with his broad authority to undertake a substantive review of all state plans and to ensure that all FSET programs successfully advance the substantive work policy which Congress intended." *Massachusetts, by Dep't of Public Welfare v. Yeutter*, 756 F.Supp. 48, 54–55 (D.Mass.1991). The issue involves an interpretation of the applicable provisions of the Food Stamp Act (the "Act"), 7 U.S.C. section 2011 (1988 & Supp.1991), *et seq.*, its legislative history, and the Secretary's regulations for implementing the Act. We affirm the district court's ruling, but on different grounds.

## BACKGROUND

Congress passed the Food Stamp Act to help those who do not have the money to buy food. The Act provides eligible families with food stamps which they may use to purchase certain foods at certain markets. 7 U.S.C. § 2016(b). The Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA") administers the Food Stamp program on the federal level. On the state level, each participating state designates a state agency to carry out the program's day-to-day operations.

Since 1987, Congress has required each participating state to design and operate a FSET program to assist participants in the food stamp program "in gaining skills, training, or experience that will increase their ability to obtain regular employment." 7 U.S.C. § 2015(d)(4)(A). The Secretary is authorized to reimburse states for

50% of their FSET administration expenses. 7 U.S.C. § 2025(a). The states must describe their FSET programs according to statutory requirements in the plans they submit annually to the Secretary for approval. 7 U.S.C. § 2020(d), (e). The Secretary is to issue regulations consistent with the Act in administering the food stamp program. 7 U.S.C. § 2013(c). The Act specifically authorizes the Secretary to withhold funds upon a state's failure to comply with specified requirements. 7 U.S.C. § 2015(d)(4)(M).

The Commonwealth has run an employment and training program for recipients of Aid to Families with Dependent Children ("AFDCET") that has been referred to as exemplary. *See* H.R.Rep. No. 271, 99th Cong., 1st Sess. 153 (1985), *reprinted in* 1985 U.S.C.C.A.N. 1257 (citing the Massachusetts AFDCET program as a very good example of showing the essential need for state flexibility in the FSET program). The Commonwealth has operated its AFDCET program on a "volunteers-first" basis and has placed tens of thousands of persons formerly on welfare in "priority jobs." [1] In keeping with the success rate of its AFDCET program, the Commonwealth for its first FSET program implemented a program nearly identical to its volunteer-oriented AFDCET program. On August 13, 1987, the Commonwealth submitted to the Secretary its FSET plan for FY 1988, and the Secretary approved the plan on September 30, 1987.

In January, 1988, however, after conducting an on-site review of the operation of the Commonwealth's FSET Program, the Northeast Regional Office of FNS notified the Commonwealth that its operation of the FSET program did not conform with applicable law. FNS primarily objected to the plan's "volunteers-first" approach and its sanctions procedure. The notice allowed 30 days for the Commonwealth to take corrective actions, after which FNS threatened to impose administrative penalties.

---

**1.** "Priority jobs" are positions that provide health insurance, pay more than $6 per hour, and last at least 30 days.

The Commonwealth responded by disputing FNS' claims and disagreeing with the need for major corrective action. On August 11, 1988, FNS issued a formal warning to the Commonwealth that it faced the withholding of federal funds and/or an administrative penalty of $210,000 for each quarter, retroactive to January, 1988, unless the Commonwealth made operational changes in its FSET program within 30 days. FNS directed the Commonwealth to submit an approved plan that identified mandatory participants and set forth procedures for informing mandatory participants of their employment and training obligations, and disqualifying those who failed to comply. The Commonwealth asserts that on August 15, 1988 it submitted its FSET state plan for FY 1989 to USDA prior to its receipt of the August 11, 1988 warning letter. The 1989 plan was nearly identical to the 1988 state plan and retained the voluntary approach set forth in the FY 1988 state plan.

During the next months, USDA and the Commonwealth entered into a series of communications and negotiations. USDA maintained that it would not approve the Commonwealth's 1989 plan unless the Commonwealth amended it to address specific concerns. USDA specifically challenged four elements of the Commonwealth's plan: (1) the "volunteers-first" approach; (2) the proposed categorical exemption of all pregnant women; (3) the proposed categorical exemption of the second parent in two-parent households; and (4) the state's implementation of a 60–day conciliation period for all mandatory participants who failed to register for the FSET program.

On October 7, 1988, the Commonwealth, under protest, revised its 1989 FSET plan to comply with USDA's demands.[2] On October 25, 1988, USDA stated that it was "prepared to approve" the revised plan, but only if the Commonwealth implemented its proposed revisions within 2 weeks. The Commonwealth objected to the implementation requirement, but later proposed instead to implement all changes by March 1,

1989. USDA later extended the implementation period to 30 days, but denied the Commonwealth's request for the March 1, 1989 extension.

The Commonwealth completed implementation of the required changes on March 20, 1989. USDA approved the Commonwealth's FY 1989 state plan on June 30, 1989. USDA, however, refused to reimburse the Commonwealth for $4,390,882 in administrative expenses that it incurred during the period October 1, 1988 through March 20, 1989. Since March 20, 1989, the Commonwealth has operated its FSET program in a manner consistent with the provisions of its revised 1989 plan. The Secretary has approved and funded the Commonwealth's FY 1990 and 1991 FSET plans. USDA has chosen not to invoke the administrative penalty, which would have amounted to a penalty of approximately $2.7 million.

USDA's decision to withhold federal funding of $4 million from the Commonwealth's FSET program gave the Commonwealth the statutory right to seek judicial review of USDA's actions. 7 U.S.C. §§ 2015(d)(4)(M)(ii), 2023. In reviewing the applicable statutory and regulatory provisions, the district court found that the language and history of the Food Stamp Act are ambiguous as to whether states participating in FSET programs must meet only minimal statutory requirements to gain the Secretary's approval of their programs. The court ruled that such ambiguity mandates that the court "should defer to the Secretary's interpretation of his approval authority under the Act as long as that interpretation is 'permissible.'" *Massachusetts v. Yeutter*, 756 F.Supp. at 52. The court held that it was permissible for the Secretary to review the substantive aspects of the Commonwealth's plan in his decision to disapprove the plan. The court also held that it was, therefore, permissible for the Secretary to withhold funding from the Commonwealth's FSET program for FY 1989.

---

**2.** The revised plan adopted a mandatory approach; reduced the conciliation period from 60 days to 10 days; and eliminated the categorical exemptions for pregnant women and second parents.

We affirm the district court's holdings, but disagree with its reasons for finding that the Secretary had the authority to withhold $4 million in funds from the Commonwealth's FSET program.

## STANDARD OF REVIEW

We apply the *de novo* standard of review in cases decided by summary judgment. *New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157, 167 (1st Cir.1989). As the cross motions of both parties demonstrate, genuine issues of material fact are not in dispute. *Massachusetts v. Yeutter*, 756 F.Supp. at 49 n. 1. Rather, the question before us is whether, as Massachusetts contends, the district court erred as a matter of law in giving undue deference to USDA on matters of statutory construction.

■ The two-step test enunciated by the Supreme Court in *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), governs our review of the Secretary of Agriculture's interpretation of the Food Stamp Act.

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. *Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

There are two issues of statutory construction. The first issue is whether Congress directly intended to delegate to the Secretary the broad authority to administer the Food Stamp Program and to engage in substantive review of the FSET provisions of state plans. If the Secretary's substantive review is permissible, we must then determine whether conditions existed in the instant case to permit USDA to withhold funding from the Commonwealth's program. In reaching our conclusion, we examine the statute's language, history, and purpose. *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9. Only *if* our analysis determines that the intent of Congress is ambiguous do we then address the issue of whether the Secretary's withholding of funding for FY 1989 "is based on a permissible construction of the statute." *Id.*, at 843, 104 S.Ct. at 2782; *Massachusetts v. Secretary of Health & Human Services*, 899 F.2d 53, 58 (1st Cir.1990).

## STATUTORY ANALYSIS

The first inquiry is "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781; *Massachusetts v. Secretary of Health & Human Services*, 899 F.2d at 57–58. This case rests upon the issue of whether the Act allows the Secretary to withhold $4 million in federal funding from the Commonwealth's FSET program. In reading the statute, we find that the language clearly sets forth the conditions under which the Secretary has the authority to withhold federal funding from state FSET programs.

In applying the statutory language to the particularities of this case, we ascertain that the only ambiguity that exists pertains to the issue of mandatory participants. We resolve this question by examining the legislative history which clearly specifies the need for some mandatory FSET participants. We need not, therefore, proceed further in our statutory analysis.

### 1. Statutory Language

We start first with the Commonwealth's argument that the Secretary is restricted to the four corners of the Commonwealth's

FSET plan in its approval process. The Commonwealth argues that 7 U.S.C. section 2020(d) and (e) require USDA to evaluate the Commonwealth's FSET plan on its face and forbid USDA from conditioning its plan approval on the Commonwealth's implementation of proposed changes to its FSET plan. The Commonwealth bases this argument on its reading of section 2020(d) which states:

The State agency ... shall submit for approval a plan of operation specifying the manner in which such program will be conducted within the State in every political subdivision. The Secretary may not, as a part of the approval process for a plan of operation, require a State to submit for prior approval by the Secretary the State agency instructions to staff, interpretations of existing policy, State agency methods of administration, forms used by the State agency, or any materials, documents, memoranda, bulletins, or other matter, unless the State determines that the materials, documents, memoranda, bulletins, or other matter alter or amend the State plan of operation or conflict with the rights and levels of benefits to which a household is entitled.

Our reading of the section compels a contrary conclusion to that asserted by the Commonwealth.

Section 2020(d) forbids the Secretary from requesting from the state as part of the plan approval process very specific information and materials that are bureaucratic in nature. The section explicitly states the elements off-limits to the Secretary: state agency instructions to staff, interpretations of existing policy, forms, etc. Nowhere in this section do the drafters suggest that the Secretary may not request information and materials beyond those specified as forbidden fruit.

The Commonwealth further contends that the language of section 2020(e)(22) limits USDA to examining the four corners of the Commonwealth's FSET plan in its approval process. The Commonwealth argues that section 2020(e)(22) forbids USDA from imposing its notions of what the "nature and extent" of the programs should be. We find that this argument contravenes the straightforward meaning of the statute's language. Section 2020(e)(22) states:

The State plan of operation ... shall provide ... the plans of the State agency for carrying out employment and training programs under section 2015(d)(4) of this title, including the nature and extent of such programs, the geographic areas and households to be covered under such program, and the basis, including any cost information, for exemptions of categories and individuals and for the choice of employment and training program components reflected in the plans.

The section delineates information that the state agency must provide in its FSET plan to USDA. The language does not *limit* the Secretary's examination authority to the four corners of the plan. Instead, the Secretary has the statutory authority to determine if a state agency has complied with the requirements of section 2020(e)(22). 7 U.S.C. § 2015(d)(4)(M). If the Secretary determines that the state agency has without good cause failed to comply with such requirements, then he may withhold funding from the noncomplying state's FSET program. *Id.* Requiring the state agency to provide certain information in its FSET plan does not translate into limiting the Secretary's approval powers to the four corners of the plan.

The Commonwealth's argument is also unreasonable. To confine the Secretary to examining the four corners of the Commonwealth's plan would abrogate the Secretary's role as an authoritative and monitoring check on state agencies. The Commonwealth's attorney general in oral argument before us argued that USDA must approve a paper plan even if the Commonwealth had no intentions of implementing the plan. The Commonwealth's attempt to salvage a successful program from the blunderbuss shots of USDA evokes our sympathy. We find, however, that this particular argument is solely a rhetorical exercise and would result in the creation of a thumb twiddling bureaucracy of the highest order.

We deal next with the Commonwealth's argument that the applicable provisions of the Act preclude USDA from withholding funding for the Commonwealth's FY 1989 FSET program. We start with the language of 7 U.S.C. section 2015(d)(4)(M)(i) and (ii):

> (M)(i) The Secretary shall ensure that State agencies comply with the requirements of this paragraph and section 2020(e)(22) of this title.
>
> (ii) If the Secretary determines that a State agency has failed, without good cause, to comply with [the requirements of paragraph 4], including any failure to meet a performance standard under subparagraph (J), the Secretary may withhold from such State, in accordance with section 2025(a), (c), and (h) of this title, such funds as the Secretary determines to be appropriate, subject to administrative and judicial review under section 2023 of this title.

Both the Commonwealth and the Secretary contend that the "plain meaning" of this provision requires the diverging results that each seeks.

The Commonwealth argues that the ordinary meaning of the words in the statute prohibits USDA, once it determines that a state is not operating its program in accordance with applicable law, from disapproving the next year's plan. It contends that USDA is restricted to imposing a financial sanction using only the administrative penalty process described in 7 U.S.C. section 2023. The Commonwealth bases this argument on making a distinction between the Secretary's plan approval and operational evaluation powers. It contends that 7 U.S.C. section 2015(d)(4)(M)(ii), which grants the Secretary the authority to withhold funding from a state's FSET program, does not cover operational evaluations. Such an interpretation of the statute does not comport with the statute's clear and straightforward language.

The Act in subsections (i) and (ii) provides the Secretary with the authority to withhold funding from state FSET programs in two instances. First, if the "Secretary determines that a State agency has failed, without good cause, to comply with" the requirements of paragraph 4. Second, if the Secretary determines that the state has not complied with the operational requirements of section 2020(e)(22). As already discussed, it is undisputed that the Commonwealth's plan met the requirements set forth in section 2020(e)(22). We need only, therefore, deal with the question of whether the Commonwealth's plan fulfilled the requirements of paragraph 4.

USDA contends that the Commonwealth failed to comply with the statutory requirements in four components of its FSET plan, and therefore, was properly subject to USDA withholding of funding under section 2015(d)(4)(M)(ii). The disputed components involved the voluntary nature of the program, the exemption of pregnant women and second parents in two-parent households, and a 60–day conciliation period. To determine whether the Secretary had the authority in the instant case to withhold federal funding for the Commonwealth's FSET program, we must examine the applicable requirements of paragraph 4 to see if the Commonwealth complied with them. We find that the Commonwealth's plan was in compliance with statutory requirements except for its volunteers-first approach.

■ We deal first with the issue of the 60–day conciliation period. Paragraph 4 specifies that a state participating in the FSET program must establish certain components in its employment and training program. Subsection (H)(i) states that "the Secretary shall issue regulations under which each State agency shall establish a conciliation procedure for the resolution of disputes involving the participation of an individual in the program." USDA regulations do not specify a designated time period for conciliations.[3] Because the regula-

---

**3.** While the regulations in 7 C.F.R. section 273.7(g)(1) do establish a 10–day period for the processing of a notice of adverse action against a food stamp recipient who is not in compliance

with program regulations, such a *notice* period is different from establishing a *conciliation* period.

tions are silent as to the length of the conciliation period, the Commonwealth pursuant to subsection (H)(i), has the authority to use a 60–day conciliation period.

■ Subsection (D)(i) of paragraph 4 discusses exemptions to the FSET program and provides that:

Each State agency may exempt from any requirement for participation in any program under this paragraph categories of household members to which the application of such participation requirement is impracticable as applied to such categories due to factors such as the availability of work opportunities and the cost-effectiveness of the employment requirements.... Each State may exempt, with the approval of the Secretary, members of households that have participated in the food stamp program 30 days or less.

As we read the Act, it gives the Commonwealth the authority to exempt certain household members, such as pregnant women and parents in two parent households, from the FSET program if the availability of work opportunities and cost effectiveness make their participation impractical. The Secretary has the explicit authority to approve the Commonwealth's exemption of food stamp recipients from the FSET program only in cases involving members of households who have been in the food stamp program 30 days or less. We can infer, then, that absent other specific guidelines, the state has the flexibility to create exemptions tailored to the particular needs of its citizenry. *See* H.Conf.Rep. 447, 99th Cong., 1st Sess. 535 (1985), *reprinted in* 1985 U.S.C.C.A.N. 2461.

The regulations already provide for the exemption of women who have children younger than 6–years-old. 7 C.F.R. § 273.7(b)(iv) (1991). It makes no sense to have pregnant women enroll in the employment and training program for less than a year and then have them either not complete or be unable to utilize their training because they would be exempt for 6 years once they give birth. This would waste valuable spaces for other participants as well as constitute an undue hardship for the women involved.

We conclude that the exemptions established by the Commonwealth fall within the plain meaning of subsection (D)(i) of paragraph 4.

We deal next with the crux of the substantive dispute between the Commonwealth and USDA. Both the Commonwealth and the Secretary agree that the language of the Act itself is ambiguous as to whether the FSET program requires mandatory participation. Subparagraph J provides that:

The Secretary shall promulgate guidelines that (i) enable State agencies, to the maximum extent practicable, to design and operate an employment and training program that is compatible and consistent with similar programs operated within the State.

The Commonwealth reads subparagraph J as providing it with the authority to tailor its FSET program along the lines of its AFDCET program, which is volunteer-oriented. The Commonwealth argues that because its AFDCET program is volunteer-oriented, its FSET program may also be volunteer-oriented. The Secretary counters that while subparagraph J may enable states to design and operate their FSET programs consistently with similar state programs, it does not allow them to design and operate programs which, in the Secretary's determination, do not further the fundamental congressional purposes underlying the FSET program.

In reading subparagraph J and other applicable provisions of the Act, we find, as do both parties, that the language lacks the clarity and precision that would deter further judicial scrutiny.[4] Therefore, in order

---

4. We enunciated in *Wilcox v. Ives*, 864 F.2d 915 (1st Cir.1988), circumstances in which the court should defer to the administrative agency's discretion. Even if we found it necessary to examine this case within the framework we established in *Wilcox*, the particularities of the instant case would not meet the *Wilcox* requirements for substantial deference to USDA's interpretation of the Act. We stated in *Wilcox* that "deference is appropriate only if the agency's interpretation is consistent with the language, purpose, and legislative history of the statute."

to decide the question of whether the Act permits the Commonwealth to operate a volunteer-oriented FSET program, we must proceed to the next level of the statutory analytical framework, the legislative history of the Act. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82; *Wilcox v. Ives,* 864 F.2d 915, 925 (1st Cir.1988).[5]

### 2. Legislative History

The legislative history shows that Congress valued state flexibility in the design of FSET programs to provide for the most possible efficient and effective programs.[6] It appears, and the Secretary does not dispute, that the Commonwealth operates a FSET program that has placed record numbers of participants into priority jobs. Our ruling today neither serves as a negative reflection on the substantive aspects of the Commonwealth's FSET program nor does it serve as a statement on the desirability or effectiveness of a volunteer-oriented FSET program. It would seem that the Commonwealth's program was successful in achieving the purposes of a FSET program.[7] Indeed, the changes that the Commonwealth has made in compliance with USDA's demands may be presently unnecessary under the new law.[8] But the immediate question before us is one of statutory construction, and we answer it according to the applicable law.

In examining the legislative history of the Act, we find that Congress expected the FSET program to consist of some mandatory participants and provided the Secretary with the authority to ensure such a result.[9] House Report No. 271 states that, "the Committee adopted a *mandatory* program, in which every State will be required to initiate an employment and training pro-

---

5. The district court based its opinion on its finding that the statutory language was ambiguous and thus, rules of statutory construction mandated it to defer to the agency's discretionary authority. We find, however, first, that the language of the Act regarding the Secretary's withholding power is clear as to the specific instances when the Secretary may withhold funding from a state agency. Second, even in places where the language is unclear and forces us to look to the legislative history to determine congressional purpose, as in the case of voluntary participation, the legislative history is clear. Judicial deference to USDA on the question of when USDA may withhold funding is thus, unnecessary. See *Wilcox* for times when deferment is required. 864 F.2d at 924.

6. House Report 271 on the FSET program states that:

State flexibility is an essential part of this program because the best employment and training programs are those to which State administrators are committed and which they design themselves. The program operating in Massachusetts, for AFDC participants only, and in San Diego County, California are very good examples. Each is an innovative program designed to meet the needs in that area. 99th Cong., 1st Sess. 153 (1985), *reprinted in* 1985 U.S.C.C.A.N. 1257.

7. The Act states that the purpose of an E & T program is to "assist[ ] members of households participating in the food stamp program in gaining skills, training, or experience that will increase their ability to obtain regular employment." 7 U.S.C. § 2015(d)(4)(A).

8. The 1990 amendments to the Act provided in part that:

Through September 30, 1995, two States, may, on application to and after approval by the Secretary, give priority in the provision of services to voluntary participants.... and the Secretary may, at the Secretary's discretion, approve additional States' requests to give such priority.

It seems to us that, aside from the $4 million in question, the recent legislation has resolved questions that this lawsuit presents concerning the merits of the Commonwealth's FSET program.

9. House Report No. 271 further states that "the Committee expects the Secretary to use the authority the Act provides to ensure that all States design a program that is in keeping with the purposes of this Act and this employment and training section." 99th Cong., 1st Sess. 153 (1985), *reprinted in* 1985 U.S.C.C.A.N. 1257.

864 F.2d at 925. We set forth three reasons why deference to agency interpretation is sometimes appropriate, none of them are present here. See *Wilcox,* at 924; *St. Luke's Hospital v. Secretary of Health and Human Services,* 810 F.2d 325, 331–332 (1st Cir.1987); *Mayburg v. Secretary of Health and Human Services,* 740 F.2d 100, 106 (1st Cir.1984). These cases state that deference may be appropriate when (1) the agency knows more about what Congress had in mind than the court, taking into account the thoroughness, validity, and consistency of the agency decision; (2) Congress delegated the law-declaring function to the agency; and (3) the agency's interpretation is consistent with the language and purpose of the statute.

gram of its own design. Those persons potentially to be included in the program are those required to register for work." 99th Cong., 1st Sess. 152 (1985), *reprinted in* 1985 U.S.C.C.A.N. 1256 (emphasis added). The Report also stipulates that a state may narrow the mandatory participants pool if "it decides that application of such work requirement is not cost effective, or is impracticable because of limited work opportunities, remote location from employment opportunities or unavailability of dependent care." *Id.* Because the language reads that states may tailor their FSET programs to allow for volunteer participants, rules of semantic logic would dictate that the program starts with the premise of mandatory participants and then proceeds to include voluntary participants.

■ Our examination of the legislative history convinces us that Congress intended FSET programs to include mandatory participants. Therefore, the district court erred in deferring to the broad authority of USDA to determine the substantive elements of the Commonwealth's FSET program. USDA had the authority to withhold funds from the Commonwealth's program because of the specific powers Congress conferred upon it pursuant to statutory language, purpose, and legislative history.

We think it important to emphasize that we disagree with the district court's ruling that the statutory language and legislative history of the Act require that we show an inordinate amount of deference to the Secretary in his withholding powers. The language of the Act provides for very specific instances when the Secretary can properly withhold funding from the state agency. The legislative history reveals that the Act's drafters felt that state flexibility was integral to the successful implementation and to the most effective running of the program. So while we reach the same conclusion as the district court and hold that the Secretary need not reimburse the Commonwealth for the $4 million it spent on the administrative expenses of its FSET program, we do so on the basis of the Act's statutory language and legislative history.

## ARBITRARY AND CAPRICIOUS

■ The Commonwealth argues that we should reverse the district court's decision on the ground that USDA's treatment of the Commonwealth's FY 1989 FSET state plan was arbitrary and capricious. The Administrative Procedure Act empowers the reviewing court to " 'decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.' " Hence we can " 'hold unlawful and set aside agency action, findings, and conclusions found to be [ ] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....' " 5 U.S.C. § 706, *quoted in Wilcox*, 864 F.2d at 924.

In *Wilcox*, we held that the Secretary of Health and Human Services' regulation regarding multiple pass-through payments to recipients of AFDC was invalid. We found that the Secretary's interpretation of the applicable statutory provisions "has radically and repeatedly alternated between polar extremes and which in the time frame of the instant lawsuit has settled on a particular interpretation which defies common sense." 864 F.2d at 925.

In this case, USDA has not issued inconsistent regulations regarding its requirements for states' FSET programs. While the Commonwealth's assertion that it was the only state whose FSET program USDA failed to fund in FY 1989 is substantiated, that alone provides insufficient basis to constitute arbitrary and capricious behavior on the part of USDA. The Commonwealth provided in the record examples of four jurisdictions, Guam, Indiana, Illinois, and Louisiana, that submitted state plans which USDA found to be facially unapprovable. USDA funded these states' FSET programs for FY 1989 after they complied with USDA demands. The Commonwealth argues that it too submitted a revised plan on October 7, 1988, albeit under protest, incorporating USDA's demands. But as the Commonwealth's oral argument on appeal makes clear, the Commonwealth had no intentions of implementing the revised

plan, insisting that USDA was wrong on the law.

As we discussed above, USDA had the authority in 1988 to demand that the Commonwealth's FSET program include some mandatory participants. Therefore, the Commonwealth's argument that USDA treated it arbitrarily and capriciously is not supported by the evidence that it adduced.

## OPERATION OF LAW DID NOT APPROVE THE COMMONWEALTH'S PLAN

■ The Commonwealth's final argument is that the district court erred by failing to address its contention that because USDA failed to approve or disapprove the Commonwealth's revised state plan within 30 days of its submission, the plan is deemed approved by operation of 7 C.F.R. § 272.2(e).[10] This argument is also unsupported by the evidence.

The Commonwealth, after a series of communications and negotiations with USDA, submitted to USDA on November 25, 1988 a progress report on its schedule to implement USDA's requirements for the Commonwealth's FSET program. We find it unnecessary to delve into the dispute between the Commonwealth and USDA as to whether Massachusetts's November 25, 1988 letter constituted a rejection of USDA requirements or if USDA unfairly required implementation of the proposed changes prior to approval. USDA on December 20, 1988 sent the Commonwealth a letter responding to its November 25th proposals. The December 20th letter fell within the 30–day period prescribed by regulation. This was all that was necessary.

We affirm the district court's judgment authorizing USDA to withhold $4 million in administrative funds from the Commonwealth's FY 1989 FSET program.

---

10. The regulation states in part:
   [I]f FNS fails to either approve, deny, or request additional information within 30 days, the [plan of operation] is approved. If additional information is requested, the State agency shall provide this as soon as possible, and FNS shall approve or deny the Plan within 30 days after receiving the information.