November 20, 1995
United States Court of Appeals
For the First Circuit


No. 95-1230

ANTHONY PARISI, II, A MINOR, BY HIS PARENT
AND NATURAL GUARDIAN, LORRALEE COONEY,

Plaintiff, Appellee,

v.

SHIRLEY S. CHATER, COMMISSIONER
OF SOCIAL SECURITY,

Defendant, Appellant.



ERRATA SHEET ERRATA SHEET

The opinion of this Court issued on November 8, 1995 is corrected
as follows:

On page 6, line 8: Replace "Parisi, Jr.'s" with "Anthony's";

On page 7, line 1, page 7, line 2, and page 14, line 18: Replace
"Energy" with "Education". 

United States Court of Appeals
For the First Circuit


No. 95-1230

ANTHONY PARISI, II, A MINOR, BY HIS PARENT
AND NATURAL GUARDIAN, LORRALEE COONEY,

Plaintiff, Appellee,

v.

SHIRLEY S. CHATER, COMMISSIONER
OF SOCIAL SECURITY,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge] 


Before

Stahl, Circuit Judge, 
Campbell, Senior Circuit Judge, 
and Lynch, Circuit Judge. 



Steve Frank, Attorney, United States Department of Justice, with 
whom Frank W. Hunger, Assistant Attorney General, Donald K. Stern, 
United States Attorney, and William Kanter, Attorney, United States 
Department of Justice were on brief, for appellant.
Sandra L. Smales, with whom Raymond Cebula was on brief, for 
appellee.



November 8, 1995


LYNCH, Circuit Judge. In 1991 when Anthony Parisi, LYNCH, Circuit Judge. 

II ("Anthony") was nine years old, the Social Security

Administration reduced the amount he was receiving in

dependent child's benefits on account of his disabled father

Anthony Parisi ("Parisi") from $464 a month to $262 a month.

The purported justification for the reduction is a provision

in the Social Security Act ("SSA") that sets a maximum amount

that can be paid out on a single wage earner's account. If

the benefits paid on that account exceed the maximum, a

reduction is required to comply with the cap. The cap was

exceeded in this case, the agency says, when Parisi's wife

(who is not Anthony's mother and with whom Anthony does not

live) was deemed "entitled" under one subsection of the

statute to spousal benefits on Parisi's account. Another

part of the same section of the statute, however, prohibited

any portion of those benefits from actually being paid to

her. The question is whether those spousal "benefits," which

were never actually payable, were properly counted toward the

family maximum cap. We conclude that they were not and

accordingly affirm the district court's reversal of the

agency's determination.

I. Factual Background 

While married to Adriana Parisi, Anthony Parisi, a

fisherman, had a child, Anthony Parisi, II, with Lorralee

Cooney of Gloucester, Massachusetts. Anthony lives with Ms.

-2- 2

Cooney, who has sole custody of him and brings this action on

his behalf.

In February 1988, Parisi became disabled, and he and

Anthony, as his dependent, started receiving payments on his

account as a wage earner.1 In 1991, Adriana Parisi applied

for and became eligible for early retirement ("old-age")

benefits under the SSA based on her own wage-earner's record.

By operation of the statute, she was automatically deemed

also to have applied for and to qualify for spousal benefits 

on Parisi's account. See 42 U.S.C. 402(r)(1). However, 

because the benefits to which Adriana was entitled on her own 

account exceeded the spousal benefits for which she qualified

on her husband's account, it was determined that she could be

paid benefits only on her own account.

The agency also decided, however, that Adriana's

spousal benefits even though not actually payable to her or

anyone else still had to be counted toward the SSA's

statutory limit (the "family maximum") on benefits available

on a single worker's record. Because the benefits Anthony

was already receiving, when combined with Parisi's own

benefits and Adriana's (non-payable) spousal benefits,

exceeded the statutory maximum amount, the agency reduced

Anthony's dependent benefits. Lorralee Cooney was so

 

1. It is undisputed that Anthony was and still remains
entitled to receive dependent child's benefits on the basis
of Parisi's work record.

-3- 3

notified. On reconsideration at Cooney's request, the agency

reaffirmed its decision to reduce Anthony's benefits.

The agency's determination was appealed to an

administrative law judge ("ALJ"), who concluded that

Adriana's non-payable spousal benefits should not be counted 

toward the family maximum. The agency appealed the ALJ's

decision to the Social Security Appeals Council, which

reversed the ALJ. The Appeals Council's decision was

appealed to the district court. See 42 U.S.C 405(g). The 

agency argued that under the plain language of the SSA,

calculation of the family maximum includes all 

"entitlements," not just entitlements that result in actual

payment. The district court disagreed. It concluded that

the SSA's "family maximum" cap on benefits was meant to

include only "effective entitlements" (entitlements that

result in some actual payment), not "conditional

entitlements," and that because Adriana Parisi's spousal

benefits were only conditional (upon her not being entitled 

to a larger benefit on her own wage-earner's account), they

were not properly counted toward the family maximum.

II. Relevant Statutory Provisions 

The two statutory provisions primarily at issue are

42 U.S.C. 403(a) and 42 U.S.C. 402(k)(3)(A). The former

contains the "family maximum" provision and the latter is the

provision that prevents Adriana Parisi from being actually

-4- 4

paid any spousal benefits on the basis of Parisi's work

record (which she would otherwise have received under section

402(b)(1)). Section 403(a) provides in pertinent part as

follows:

. . . [T]he total monthly benefits to which
beneficiaries may be entitled under section
402 or 423 of this title for a month on the
basis of the wages and self-employment
income of [an] individual [wage-earner]
shall . . . be reduced as necessary so as
not to exceed [the maximum amount set by
statute].

42 U.S.C. 403(a)(1). And section 402(k)(3)(A) provides in

relevant part:

If an individual is entitled to an old-age
or disability insurance benefit for any
month and to any other monthly insurance
benefit for such month, such other
insurance benefit for such month, after any
reduction . . . under section 403(a) of
this title, shall be reduced, but not below
zero, by an amount equal to such old-age or
disability insurance benefit . . . .

42 U.S.C. 402(k)(3)(A).

The parties agree that, because the monthly amount

of Adriana Parisi's old-age benefits on her own work record

exceeds the amount of spousal benefits she could be paid on 

her husband's record under section 402(b)(1),

section 402(k)(3)(A) has the result of reducing to zero the 

payable amount of Adriana Parisi's spousal benefits. It is

also agreed that Adriana's own old-age benefits, as well as

Parisi's benefits, are not subject to reduction under section 

403(a). Thus the only payable benefits at stake are

-5- 5

Anthony's.2 The statutory issue is whether the amount of

"total monthly benefits to which beneficiaries may be

entitled" for purposes of section 403(a) must include what

the monthly amount of Adriana's spousal benefits would have

been under section 402(b)(1) but for the operation of section

402(k)(3)(A) of the statute. If Adriana's non-payable

spousal benefits are included in the family maximum

calculation, then Anthony's benefits were properly reduced.

If not, then the district court's judgment must be affirmed.

III. Discussion 

Our analysis begins with the text of the statute.

If the meaning of the text is clear, then that meaning must

be given effect, unless it would produce an absurd result or

one manifestly at odds with the statute's intended effect.

St. Luke's Hosp. v. Secretary of HHS, 810 F.2d 325, 331 (1st 

Cir. 1987). If the relevant text and congressional intent

are ambiguous, then an agency's reasonable interpretation is

entitled to deference. See Chevron U.S.A., Inc. v. Natural 

Resources Defense Council, Inc., 467 U.S. 837 (1984). No 

deference, though, is due an agency interpretation that is

inconsistent with the language of the statute, contrary to

the statute's intended effect, arbitrary, or otherwise

 

2. The parties also agree that if Adriana had actually been
paid spousal benefits on Parisi's account, then a
corresponding reduction in benefits for Anthony would have
been warranted under the family maximum provision.

-6- 6

unreasonable. See Massachusetts Dep't of Energy v. United 

States Dep't of Education, 837 F.2d 536, 541 (1st Cir. 1988). 

A. The Statutory Language 

The agency claims that its position is plainly

supported by two aspects of the statutory text: the term

"entitled" in section 403(a), and the phrase "after any

reduction . . . under section 403(a)" in section

402(k)(3)(A). We conclude that the statutory text does not

support the intuitively troubling result urged by the agency.

The Commissioner of Social Security ("Commissioner")

emphasizes that the family maximum is formulated on the basis

of entitlement, and that section 403(a) never speaks in terms 

of benefits actually received. Thus, the argument goes,

because subsection (b)(1) of section 402, considered in

isolation, "entitles" Adriana Parisi to spousal benefits on

the basis of her husband's SSA record, such benefits must be

included in the family maximum calculation, even though the

same section of the statute just a few paragraphs later, see 

402(k)(3)(A), operates to render those very benefits wholly

non-payable. 

The Commissioner's argument is strained, and

certainly not dictated by the statutory text's plain

language. Section 403(a)(1) of the SSA limits and requires

the reduction "as necessary" of the "total monthly benefits

to which beneficiaries may be entitled under section 402 

-7- 7

. . . on the basis of the wages and self-employment income of

[the wage-earner, here Mr. Parisi]." 42 U.S.C. 403(a)

(emphasis added). The agency's claim that section 403(a)

requires the inclusion of all "entitlements" in the family

maximum computation begs the question whether a so-called

"entitlement" created in one part of section 402 that is

simultaneously prevented from yielding any actually payable

benefit by another applicable portion of section 402 can

properly be deemed an "entitle[ment] under section 402" at

all.3 We doubt that it can. Indeed, even according to the

agency's own regulatory definition, a person is "entitled" to

a benefit only when that person "has proven his or her right

to benefits for a period of time." 20 C.F.R. 404.303.

Here, Adriana Parisi has "proven" no right to benefits under 

section 402 (taken as a whole) for any period of time. 

We need not decide, however, whether the

Commissioner's understanding of the term "entitlement" is

somehow supportable, because the agency's argument, even

taken on its own terms, does not carry the day. For one

 

3. It would seem an unconventional usage at best to say that
Adriana Parisi is entitled to benefits which the statute 
clearly disallows in her case, leaving her with not even an
expectancy of receiving them. Cf. Board of Regents v. Roth, 
408 U.S. 564, 576-77 (1972) (an entitlement, contrasted to a 
mere expectancy, creates a property interest protected by the
Fourteenth Amendment); Goldberg v. Kelly, 397 U.S. 254, 260- 
66 & n.8 (1970) (deprivation of statutory entitlement 
triggers procedural due process concerns); see also Bell v. 
Burson, 402 U.S. 535, 539 (1971) (similar). 

-8- 8

thing, the claim that section 403(a) is concerned primarily

with "entitlements" is not, in fact, fully borne out by the

actual language of the statute. Section 403(a) places a

limit not on entitlements per se, but rather on "the total 

monthly benefits to which beneficiaries may be entitled under 

section 402 . . . ." 42 U.S.C. 403(a) (emphases added). A 

natural reading of this language suggests that the primary

object of limitation is the "total monthly benefits" produced

by the operation of section 402 as a whole, and not, as the 

Commissioner argues, theoretical entitlements created by one

fragment of section 402 considered in artificial isolation

from the rest of that same section, and wholly apart from the

benefits that ultimately attach. Here, the total benefits to 

which Adriana Parisi might be deemed "entitled" under section

402 when that section is considered in its entirety 

amount to zero. Hence, Adriana's putative benefits under 

section 402 could not possibly contribute anything to the

family maximum computation under section 403(a).

In addition to requiring an unnatural reading of the

statute, the Commissioner's argument is logically unsound.

Under the Commissioner's "pure entitlement" approach, section

403(a) is said to place a ceiling on pure entitlements,

regardless whether any payable benefits attach thereto. If

the total amount of entitlements available on a single 

worker's record exceeds the statutory limit, so the theory

-9- 9

goes, a reduction under section 403(a) is required, whether

the excess entitlements produce payable benefits or not. On

the other hand, the Commissioner simultaneously claims that

when the total amount of "entitlements" causes the family

maximum cap to be exceeded, it is the payable benefits that 

are subject to reduction under the statute. This position is

internally inconsistent. If the thrust of section 403(a) is

to place a limit on entitlements, it is contradictory to say 

that compliance with the family maximum cap can be achieved

through a reduction of payable benefits. Because under the 

Commissioner's logic, an "entitlement" is entirely separate

from the payable benefits (if any) that attach, it would seem

to follow that a reduction in benefits paid could never be 

effective to achieve compliance with the cap.

We conclude that the Commissioner's contention that

section 403(a) is concerned purely with theoretical

entitlements, irrespective of whether any actually payable

benefits attach thereto, is supported neither by the language

of the statute nor by reason.

We also are unpersuaded by the Commissioner's

argument to the extent it rests on the phrase "after any

reduction . . . under section 403(a)" in section

402(k)(3)(A). The Commissioner contends that this phrase

specifically instructs that the reduction under

section 403(a) for compliance with the family maximum

-10- 10

provision be computed before any reduction is taken under 

section 402(k)(3)(A), and that, therefore, for purposes of

section 403(a), Adriana Parisi's spousal benefits must be

treated (contrary to fact) as if they were fully payable.

The Commissioner reads too much into the phrase

"after any reduction . . . under section 403(a)." Section

402(k)(3)(A) is triggered when an individual who is entitled

to old-age benefits on her own social security record (as

Adriana is in this case) is also facially entitled to some 

other simultaneous benefit (in this case, spousal benefits on

Parisi's account). In substance, section 402(k)(3)(A) has

the effect of authorizing such an individual to receive

payment of the larger of the two simultaneous benefits, but

not both.4 Thus, section 402(k)(3)(A) requires comparing

the size of the beneficiary's "other" benefit with her own

old-age benefit. The "after any reduction under section

403(a)" language in section 402(k)(3)(A) ensures that, in

determining the amount of the "other" simultaneous benefit in

question, the calculation will take into account any

reduction to the "other" benefit that would otherwise be

required under section 403(a). This prevents the old-age

 

4. More precisely, the provision entitles the beneficiary to
payment of her old-age benefit plus the difference between 
the "other" benefit and the old-age benefit, if that
difference is greater than zero. This is the same as saying
that the beneficiary is entitled to an amount equal to the
larger of the two simultaneous benefits in question.

-11- 11

beneficiary from receiving, by operation of the simultaneous

benefits provision, any amount of benefits that would

otherwise be excluded as exceeding the cap imposed by section

403(a).5

There is nothing in the language of section

402(k)(3)(A) or section 403(a), however, that dictates that

the family maximum computation cannot take into account the

fact that an entitlement that would normally contribute to

the family maximum amount has been reduced to zero by

operation of the simultaneous benefits provision of section

402(k)(3)(A). It is true that the computation required under

section 402(k)(3)(A) requires a provisional determination

whether the "other" simultaneous benefit (here, Adriana's

spousal benefits) would, if payable, be subject to reduction

under section 403(a). But this computation is only necessary

for the purpose of determining what portion of the two

simultaneous benefits the beneficiary (Adriana) is entitled

to receive. There is no language in section 402(k)(3)(A),

and certainly not in section 403(a), requiring that the

 

5. Suppose, for example, that a beneficiary is
simultaneously entitled to receive her own old-age benefit of
amount B and a spousal benefit of amount S. Suppose also
that if the spousal benefit were payable, the family maximum
cap would be exceeded, and the spousal benefit (S) would be
reduced by the amount of the statutory reduction, to amount
S(r). The "after any reduction" language in section
402(k)(3)(A) ensures that the beneficiary will receive an
amount equal to the larger of B and the reduced S(r), not 
simply the larger of B and S.

-12- 12

family maximum computation ignore the actual results of the 

simultaneous benefits determination of section 402(k)(3)(A).

To the contrary, the statutory language suggests an

interplay between section 403(a) and section 402(k)(3)(A)

that belies the position advanced by the Commissioner.

Section 403(a) requires only such "reduc[tion] as necessary 

so as not to exceed" the family maximum. The determination

of whether a reduction is necessary in this case depends upon

the calculation of the "total monthly benefits" to which

Adriana Parisi "may be entitled under section 402" on the

basis of her husband's SSA record. As explained, that amount

is zero. Hence, the relevant "total monthly benefits" 

available under section 402 on Parisi's work record (combined

with Parisi's own benefits) do not exceed the statutory

ceiling. It cannot be "necessary," then, to reduce Anthony's

benefits.

We conclude that the Commissioner's position does

not follow from the plain language of section 402(k)(3)(A)

and section 403(a).

B. Legislative History 

As the district court observed, the interpretation

urged by the Commissioner produces a result that Congress

apparently sought to avoid. The most illuminating

legislative comments are found in connection with the

-13- 13

enactment of the 1949 amendments to the SSA, which changed

the previously existing family maximum provision:

Under the present law, the total of the
family benefits for a month is reduced to
the maximum permitted by section [403(a)]
prior to any deductions on account of the
occurrence of any event specified in the
law . . . . Section [403(a)] as amended by
the bill reverses this procedure and
provides that the reduction in the total
benefits for a month is to be made after
the deductions. As a result, larger family
benefits will be payable in many cases.

S. Rep. No. 1669, 81st Cong., 2d Sess. (1950), reprinted in 

1950 U.S.C.C.A.N. 3287, 3361. After this statement, the

Senate Report set forth a hypothetical scenario illustrating

that under the amendments to section 403(a), the family

maximum provision would not operate to reduce a child's SSA

benefits on account of a family member's nominal entitlement

to benefits that are not actually payable. See id. 

Congress expressed an intent that section 403(a) not

operate to deprive a dependent child of SSA benefits on the

basis of theoretical entitlements that produce no actual

benefits. The agency's reading of the statute is

inconsistent with that intent.

C. Regulatory Language 

Our conclusion that the Commissioner's

interpretation of the statute is inconsistent with both its

text and intended effect suffices, under Chevron, to obviate 

any requirement of deference to the agency's position. See 

-14- 14

Massachusetts Dep't of Energy, 837 F.2d at 541. We add, 

however, as a capstone to our analysis, that the Social

Security Administration's own regulations are at odds with

its proposed construction of the statute. The regulation

that describes generally the effect of the family maximum

provision explains its operation in this way:

Family Maximum. As explained in 404.403, 
there is a maximum amount set for each
insured person's earnings record that
limits the total benefits payable on that 
record. If you are entitled to benefits as
the insured's dependent or survivor, your
benefits may be reduced to keep total 
benefits payable to the insured's family 
within these limits.

20 C.F.R. 404.304(d) (emphasis added). The regulation that

more specifically describes the operation of the family

maximum provision contains similar language:

The Social Security Act limits the amount
of monthly benefits that can be paid for 
any month based on the earnings of an
insured individual.

20 C.F.R. 404.403(a)(1) (emphasis added).

The agency's own interpretative regulations thus

interpret the family maximum provision as operating to limit

the "amount of benefits that can be paid" on a single 

worker's account. They do not state that section 403(a) caps

the total amount of entitlements that might be available on 

an account. That the agency has chosen in its own

regulations to describe the family maximum as placing a

ceiling on benefits paid or payable casts further doubt on 

-15- 15

its contention here that section 403(a) is concerned with

capping pure entitlements, regardless of the amount of 

payable benefits that attach.

To similar effect is language contained in the

agency's written rulings on Anthony's benefits as

communicated to Lorralee Cooney. In the first letter from

the Social Security Administration to Cooney notifying her

that her son's benefits were to be reduced, the agency

explained that the reduction was required because the statute

imposes a "limit on how much we can pay on each person's 

Social Security record [emphasis added]." And later, in a

letter reaffirming its initial decision after

reconsideration, the agency informed Cooney that the family

maximum provision "limits the total amount of the benefits

payable on an individual's earnings record." 

The regulations and agency statements quoted above

support the conclusion we adopt here, namely, that the

"family maximum" provision of section 403(a) operates to

limit only those benefits that are payable on a single 

worker's account.

D. Policy Considerations 

We observe, finally, that the purported policy

reasons offered in support of the Commissioner's construction

of the statute lack persuasive force.

-16- 16

The agency says its position prevents families from

receiving duplicative or excessive benefits. In this case,

the Commissioner asserts, applying section 403(a) in the

manner suggested would have the effect of making the total

amount of benefits payable to the "family unit" (Parisi,

Anthony, and Adriana) roughly the same as it was before

Adriana became entitled to receive her own old-age benefits.

The problem with this rationale is twofold. First,

the family maximum provision (despite its common appellation)

is written not as a broad limitation upon the amount that a 

family unit can receive in total SSA benefits, but rather as

a specific limitation upon the amount of benefits available

on the basis of a single worker's record. See 20 C.F.R. 

404.403(a)(1) (explaining that section 403(a) places a

maximum "for each person's earnings record that limits the

total benefits payable on that record" (emphasis added)). 

Adriana "earned" her old age benefits through her own years

in the work force, not because she was the wife of Parisi.

The question under section 403(a) is not whether the family's 

benefits have exceeded a certain level, but whether the

benefits payable on a single wage-earner's account have

exceeded the statutory maximum.

Second, the agency's suggestion that the reduction

of benefits to Anthony prevents duplicative payments to the

"family unit" rings hollow. Anthony lives with his natural

-17- 17

mother, not with Adriana and Parisi. The agency does not

suggest that any portion of Adriana's or Parisi's benefits

reaches the child. The agency's statement that "the family

unit continues to receive approximately the same overall

benefits as it did before" thus distorts reality. In fact,

under the agency's interpretation, Anthony receives only half

the benefits he was receiving before; and because neither the

father's nor Adriana Parisi's own benefits are subject to

reduction under the family maximum provision, it is only the 

child who has been adversely affected by the agency's action

in this case.

The other purported policy justification offered in

defense of the Commissioner's position is that reduction of

the child's benefits in this case is required to uphold the

meaning of "entitlement." The Commissioner contends that

because section 403(a) places a limit on "entitlements," and

because Adriana Parisi is "entitled" to spousal benefits

under one subsection of the statute (even though those

benefits are not payable), failure to include those non-

payable benefits in the family maximum tally will dilute the

meaning of "entitlement" under the SSA.

We find this reasoning unpersuasive. The flaw in

this argument is the same as the flaw underlying its plain

meaning argument: it incorrectly assumes that section 403(a)

is concerned with keeping pure "entitlements" under the

-18- 18

statutory limit. To the contrary, as we concluded above,

section 403(a) operates in this case to limit the total

amount of benefits payable on a single wage-earner's record 

under the relevant benefits provisions (read as a whole), not

to limit entitlements theoretically available under one

subsection of the statute considered in artificial isolation.

In any event, although this conclusion negates the

Commissioner's claim that Adriana Parisi's non-payable

spousal benefits must be included in the family maximum

calculation, it does not directly undermine the

Commissioner's purported definition of "entitlement," nor is

it necessarily inconsistent with saying here that Adriana

Parisi has, in some abstract sense, an "entitlement" to

spousal benefits under section 402(b)(1) read in isolation

from the rest of section 402. We hold only that Adriana's

non-payable spousal benefits do not count toward the section

403(a) "family maximum."

E. Conclusion 

We conclude that the Commissioner's proposed

construction of section 403(a) is not supported by the

language of the statute, is logically flawed, is inconsistent

with the statute's intended effect, is contrary to the

agency's own interpretative regulations, and is not supported

by any sound considerations of policy. Accordingly, we do

not defer to the Commissioner's position under the principles

-19- 19

of Chevron, and we hold that section 403(a) operates to limit 

the total amount of benefits actually payable on a single 

worker's record, not the amount of entitlements theoretically

available.6

In this case, because Adriana Parisi's "entitlement"

under section 402(b)(1) to spousal benefits on Parisi's work

record produces zero payable benefits as a result of the 

operation of section 402(k)(3)(A), no such benefits are

included in the computation required under section 403(a).

Consequently, the total amount of benefits payable on the

basis of Parisi's work record does not exceed the maximum

imposed by the statute, and it is not "necessary" for

purposes of section 403(a) to reduce Anthony's benefits. The

district court correctly reversed the decision of the Social

Security Appeals Council.

Affirmed. 

 

6. Our reasoning differs from that employed by the district
court. The district court's analysis distinguished between
"effective" and "conditional" entitlements. This
distinction, although sensible, has no roots in the statutory
language. We rely, instead, on the notion that section
403(a) places a limit not upon non-payable "entitlements"
created by an isolated subsection of the SSA, but upon
payable benefits in this case, the total benefits yielded
by section 402 of the SSA read as a whole. This notion is
semantically supported by the statutory framework and by the
agency's own regulations, which speak specifically in terms
of payable benefits (e.g., 20 C.F.R. 404.304(d)). 

-20- 20